## GRAF v. MALLON, Brigadier General.

### No. 12628.

Circuit Court of Appeals, Eighth Circuit.

Oct. 11, 1943.

O. W. Pete Wiggins, of Little Rock, Ark., for appellant.

Sam M. Wassell, Asst. U. S. Atty., of Little Rock, Ark. (Sam Rorex, U. S. Atty., and Troy W. Lewis, Major, J.A.G.D., both of Little Rock, Ark., on the brief), for appellee.

Before SANBORN and RIDDICK, Circuit Judges, and LEMLEY, District Judge.

LEMLEY, District Judge.

This is an appeal from a judgment of the district court denying relief on a petition for a writ of habeas corpus of a soldier who had been inducted into the armed forces of the United States under the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix § 301 et seq., after denial by the local board of his claim for exemption as a conscientious objector.

It was alleged in the petition and an amendment thereto that the petitioner was being unlawfully held and deprived of his liberty by the respondent, Brigadier General F. B. Mallon, Commanding Officer at Camp Robinson, Arkansas; that petitioner was and had always been a conscientious objector and should have been classified in Class IV-E as such by the local draft board; that he had been unlawfully classified and placed in Class I-A and inducted into the army; that his said classification and induction and all proceedings in connection therewith were illegal and void, and that he was being subjected to military control over his conscientious objections; that the local board, the appeal board, the hearing officer, and all others who had a part in classifying him and inducting him into the army had wholly disregarded that part of said act dealing with the exemption of conscientious objectors, and that all their actions there-

under were arbitrary, capricious and erroneous and in derogation of his constitutional rights.

General Mallon filed a response to said petition denying all the material allegations thereof and alleging that the petitioner was a soldier in his command, taking basic training, who was free to come and go subject only to military regulations. Certain prior proceedings had in the District Court of the United States for the Eastern District of Missouri were set up in said response; these will be referred to later.

The case was submitted to the district court on an agreed statement of facts and certain evidence introduced by the petitioner. Nothing other than the agreed statement was offered by the respondent, who, upon completion of petitioner's evidence, moved that his petition be dismissed for the reason that it was based upon a contention that he did not get a fair hearing or a fair opportunity to be heard before the local board or the appeal board on his claim for exemption and that he had offered no proof whatever in that regard. This motion was in effect sustained by the court, which, after making specific findings of fact, and a conclusion of law to the effect that the local and appeal boards did not act capriciously or arbitrarily in denying the petitioner's claim, entered an order remanding him to the custody of the respondent and dismissing the writ.

The facts set up in the stipulation, directly and by reference, are as follows:

The petitioner, a resident of St. Louis, Mo., on October 15, 1940, registered at St. Louis under the provisions of said Act; on May 19, 1941, he was mailed a questionnaire by Local Board No. 15 of St. Louis; he returned the same duly executed on May 23, 1941, and on the same day filed with the local board his claim as a conscientious objector on the form provided for that purpose. On July 3, 1941, he was notified to appear for physical examination. On July 12, 1941, he reported for said examination, and the examiner's report thereof was on the same day forwarded to the local board. On July 17, 1941, he was duly notified by that board, in the manner required by the Act, that he had been placed in Class I-A (the notice in question being in writing and containing advice as to his right of appeal). On July 21, 1941, he presented written notification of his intention to appeal from said ruling to State Board of Appeals No. 7 of the State of

Missouri, "and the appeal was properly lodged and considered by Appeal Board No. 7;" "upon receipt of the appeal, said entire case was transmitted to the Department of Justice;" it was referred to that department to Honorable Frank H. Thompson, "the duly appointed hearing officer for conscientious objector cases for the Eastern District of Missouri." On December 10, 1941, the hearing officer conducted a hearing, at which the petitioner appeared and testified. Thereafter, said officer made his report to the Attorney General and recommended that the claim of petitioner for exemption as a conscientious objector be denied; the Attorney General approved and concurred in the recommendation of the hearing officer, and so notified the appeal board. The appeal board, "after consideration of said appeal," upheld the local board in its classification of petitioner in Class I-A by a vote of three to nothing (3 to 0), and, on February 20, 1942, so notified the local board. The local board in turn on February 24, 1942, notified the petitioner in writing that his classification in I-A had been affirmed by the appeal board by said vote of three to nothing and that he therefore continued in that class. On March 16, 1942, petitioner was notified to report to the board for induction. On March 26, 1942, he duly reported and was transported to the Induction Center at Jefferson Barracks, Missouri, "where he was inducted into the United States Army;" he was tendered the oath provided for in army regulations, but refused to subscribe thereto on the ground that he was a conscientious objector. Thereupon, he was informed that he was a member of the army, nevertheless. He refused to obey certain direct orders of his military superiors and was held for court martial proceedings before a military tribunal. Whereupon, on May 7, 1942, he filed a petition for a writ of habeas corpus in the District Court of the United States for the Eastern District of Missouri, alleging that he was being unlawfully detained and held by the respondent in that action, Col. Allen Kimberly, U. S. Army, the military commander of Jefferson Barracks, in that he had not been inducted into the military forces of the United States under said Act, and was not a member thereof, and therefore not subject to military law. On May·14, 1942, a hearing was had on said petition before one of the judges of said district court, who, after making findings of fact detailing among other things the various and sundry

steps taken by the local and appeal boards as hereinbefore set forth, concluded that petitioner was properly inducted into the army in accordance with the Act and the regulations promulgated thereunder, and hence was subject to military law, and dismissed the proceeding. No appeal was taken from this judgment. Subsequently, the petitioner was transferred to Camp Robinson, Arkansas, of which the respondent in this action, Brig. Gen. F. B. Mallon, was the commanding officer.

So much for the stipulation of facts.

The evidence offered by the petitioner consisted of certain documents, which had previously been received in evidence in connection with the stipulation of facts, a letter from a minister of the gospel, directed "To Whom it May Concern" and certifying as to petitioner's good character, and the oral testimony of the petitioner and the witness, Joseph J. Graf.

The petitioner testified that his home was in St. Louis, Mo., that he was born there April 15, 1917; that he registered at Draft Board No. 15 in said city; that he filled out his questionnaire and stated therein that he was a conscientious objector and signed his name to that particular assertion; that this was before Pearl Harbor; that he was opposed to war in any form; that he was a member of the Catholic Church, having been christened in infancy; that his religious teaching had "a lot to do" with his opposition to war; that he was employed as a bellman at the Jefferson Hotel; that he was offered an opportunity to work in defense plants, but refused to accept because he "didn't have any idea of doing that kind of work," he "just didn't want that kind of money;" that he had been in the army since April 23, 1942, and in the guard house five months and fourteen days; that he hadn't accepted any pay "because I don't believe I am in the army, and I don't think I should take any pay because I don't believe in the thing * * *. It just isn't right. * * * I don't want that kind of money;" that the only question brought up in the hearing on his petition previously filed in the Eastern District of Missouri was whether he was in the army, and that no issue was raised as to whether he was a conscientious objector; that he took up with the respondent in this action, Gen. Mallon, the matter of his conscientious objections, and was told to write a letter setting them out, which he did, delivering the letter to his captain; that it was not addressed to anyone because Gen. Mallon "didn't know where it had to go as yet;" that it was written about five or six weeks previously; that the last time he heard of the letter it was in the office of Major Valent, who told him it had been forwarded to Gen. Mallon after being held up for about five weeks; that since the adjudication that he was in the army he had obeyed orders because forced to do so and that all such acts had been done over his objections; that he had not asked for nor received any pass or furlough; he didn't want any as he was being held against his will; that he was in court in response to a command.

The witness, Joseph J. Graf, testified that he was a brother of petitioner, ten years older than the latter; that he and petitioner were both single, both Catholics, and both conscientious objectors; that they had been constant companions from childhood, with the exception of about three years; that he and petitioner had been discussing with each other their conscientious objections for at least three or four years; that he, himself, had "felt that way" for about ten years; that he was present at the hearing on his brother's petition in the Eastern District of Missouri, and that the only question raised was whether the latter was in the army; that the individual members of the Catholic Church have a right to their conscientious objections to war; that he was not present when his brother was before the draft board and knew nothing of his own knowledge as to what transpired there; that his brother's conscientious objections coincided with his and were based on religious belief; that witness was a teacher of mathematics.

That part of the Act dealing in particular with the exemptions allowed conscientious objectors, 50 U.S.C.A. Appendix § 305 (g), is as follows: "(g) Nothing contained in this Act shall be construed to require any person to be subject to combatant training and service in the land or naval forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Any such person claiming such exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the land or naval forces under this Act, be assigned to noncombatant serv-

ice as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be assigned to work of national importance under civilian direction. Any such person claiming such exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board provided for in section 10 (a) (2). Upon the filing of such appeal with the appeal board, the appeal board shall forthwith refer the matter to the Department of Justice for inquiry and hearing by the Department or the proper agency thereof. After appropriate inquiry by such agency, a hearing shall be held by the Department of Justice with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. The Department shall, after such hearing, if the objections are found to be sustained, recommend to the appeal board (1) that if the objector is inducted into the land or naval forces under this Act, he shall be assigned to noncombatant service as defined by the President, or (2) that if the objector is found to be conscientiously opposed to participation in such noncombatant service, he shall in lieu of such induction be assigned to work of national importance under civilian direction. If after such hearing the Department finds that his objections are not sustained, it shall recommend to the appeal board that such objections be not sustained. The appeal board shall give consideration to but shall not be bound to follow the recommendation of the Department of Justice together with the record on appeal from the local board in making its decision. Each person whose claim for exemption from combatant training and service because of conscientious objections is sustained shall be listed by the local board on a register of conscientious objectors."

Authority was given the President in the Act to prescribe rules and regulations to carry out the provisions thereof, and acting under this authority certain regulations with reference to classification procedure and procedure on claims of conscientious objectors were promulgated, from which regulations we quote as follows:

"Article 329. Classification Procedure.—a.: After receiving the registrant's questionnaire, the local board shall determine in which class the registrant should be placed * * *. Each registrant may have only one classification at a time. He shall be placed in the lowest class * * * for which grounds are established. * * * The local board may use its authority to summon the registrant and other witnesses before it, * * * to secure the information needed for its determination * * *." Selective Service Regulations, Section XVIII.

"Article 363. Procedure on claims of conscientious objectors.—A registrant who claims to be a conscientious objector shall offer information in substantiation of his claim on a special form (Form 47) which when filed shall become a part of his questionnaire. * * * In the case of any registrant who claims to be a conscientious objector, the local board shall proceed in the ordinary course to classify him upon all other grounds of deferment and shall investigate and pass upon his claim as a conscientious objector only if, after physical examination, but for such claim, he would have been placed in Class I-A, Class I-B, Class I-D, or Class I-E. * * *." Selective Service Regulations, Section XXV.

Article 370, Section XXVII, of said regulations, from which it is not necessary to quote, provided for an appeal to the board of appeals, if prosecuted within five days.

Article 375 of Section XXVII, dealing with appeals in connection with claims of conscientious objectors to war, provides that if an appeal involves a question of whether or not the registrant is entitled to be sustained in his claim that he is a conscientious objector, the board of appeal shall review his file and determine whether he should be classified in certain classes other than Class I, and if it is determined that he should be placed in any class other than Class I, it shall place the registrant in such class, but, "otherwise the entire record shall then be transmitted to the United States District Attorney for the judicial district in which the local board of the registrant is located for the purpose of securing an advisory recommendation of the Department of Justice." It is then provided:

"c. The Department of Justice shall thereupon make an inquiry and hold a hearing on the character and good faith of the conscientious objections of the registrant. The registrant shall be notified of the time

and place of such hearing and shall have an opportunity to be heard. * * *. If the Department of Justice finds that the objections of the registrant are not sustained, it shall recommend to the board of appeal that such objections be not sustained.

"d. Upon receipt of the report of the Department of Justice, the board of appeal shall determine the classification of the registrant, and in its determination it shall give consideration to, but it shall not be bound to follow, the recommendations of the Department of Justice.

"377. Procedure of local board when appealed case is returned.—* * * b. If the board of appeal affirms the local board's classification, the local board, upon receiving the file from the board of appeal, shall proceed as follows: (1) Mail a Notice of Continuance of Classification (Form 58) to the registrant, * * *. (2) If one or more members of the board of appeal dissented from the determination of that board, the local board shall indicate on the Notice of Continuance of Classification the numerical division of the board of appeal."

Article 379 of Section XXVIII of the regulations provides for appeal to the President, and paragraph 2 thereof provides that "the appeal to the President must be on grounds of dependency only."

In the response to the petition and amendment thereto it was pleaded, among other things, that all of the issues in this case had theretofore been duly adjudicated by the United States District Court for the Eastern District of Missouri, but that question was not raised in the motion to dismiss made by respondent in the lower court and he does not argue it here. He rests his case upon the proposition that the district court had no power to pass upon the question as to whether or not the petitioner was a conscientious objector, that power being vested in the local draft board; that said court had power to decide only whether the Selective Service officials had acted arbitrarily or capriciously in their determination, and, there being no evidence in the record to that effect, the judgment of the district court should be affirmed.

█ We have had some difficulty in determining the petitioner's exact contention in this case. In argument before this court his counsel took the position in a general way that the action of the board in classifying him in Class I-A and in denying his claim for exemption as a conscientious objector was illegal, capricious and arbitrary, and, being so, deprived him of his liberty without due process of law, and he rested his case on that contention. He failed, however, to point out specifically any evidence of illegal action on the part of the Selective Service officials, or anything in the record tending to show that their acts in the premises were capricious or arbitrary. The petitioner has merely endeavored to show the court that he had at all times been and was at the time of the hearing a conscientious objector, and hence the local board erred in holding to the contrary. He offered no proof tending to show that he did not get a fair hearing before the Selective Service tribunals, or that they did not base their findings on substantial evidence; the record before this court is silent in that respect. It does appear from the record, however, as is shown by the agreed statement of facts, that the petitioner was given full opportunity to present his claim for exemption and to perfect his appeal to the extent allowed by the Act, in substantial compliance with the provisions of the Act and the appropriate regulations promulgated thereunder, and that he availed himself of all of those privileges.

█ Under the Act, the power to classify registrants and to hear and determine all questions or claims with respect to inclusion for or exemption or deferment from service under the Act is vested in the local draft boards subject to the right of appeal to the appeal boards, and in certain instances, not pertinent here, to the President. 50 U.S.C.A. Appendix § 310. And the determinations of those boards upon such hearings are final, and can be set aside by the courts only upon a showing that no fair opportunity to be heard was accorded, or that they were not supported by substantial evidence. Seele v. United States, 8 Cir., 133 F.2d 1015; Johnson v. United States, 8 Cir., 126 F.2d 242; Rase v. United States, 6 Cir., 129 F.2d 204; Checinski v. United States, 6 Cir., 129 F.2d 461; United States v. Grieme, 3 Cir., 128 F.2d 811; Benesch v. Underwood, 6 Cir., 132 F.2d 430; Goff v. United States, 4 Cir., 135 F.2d 610; Franke v. Murray, 8 Cir., 248 F. 865, L.R.A.1918E, 1015; Arbitman v. Woodside et al., 4 Cir., 258 F. 441; United States ex rel. Pascher v. Kinkead et al., 3 Cir., 250 F. 692, affirming, D.C.N.J., 248 F.

141; Angelus v. Sullivan et al., 2 Cir., 246 F. 54; Chin Yow v. United States, 208 U. S. 8, 28 S.Ct. 201, 52 L.Ed. 369. And in the absence of proof to the contrary, the courts will presume, as in the case of other governmental agencies, that their findings and determinations were based on substantial evidence and were not arbitrarily or capriciously made. Leuer v. McIntyre et al., Tex.Civ.App., 162 S.W.2d 158.

The action of the district court in discharging the writ was correct and its judgment is affirmed.