**UNITED STATES ex rel. RUBIN v. MAGRUDER, Commanding Officer, United States Naval Training Station, Newport, R. I.**

Misc. No. 230.

District Court, D. Rhode Island.

May 31, 1944.

948

Solomon Badesch, of New York City, for petitioner.

George F. Troy, U. S. Atty., and Edward M. McEntee, Asst. U. S. Atty., both of Providence, R. I., for respondent.

HARTIGAN, District Judge.

George R. Rubin, of Brooklyn, New York, petitions this court for a writ of habeas corpus for the release from the United States Navy of his son, Mortimer J. Rubin, who has been inducted and, ac-cording to the petitioner, is now being detained and restrained of his liberty in violation of law.

The respondent, the Commanding Officer, United States Naval Training Station, Newport, Rhode Island, filed a traverse asserting that he holds Mortimer J. Rubin by authority of the statutes of the United States as a member of the United States Navy, he having been lawfully selected and inducted under the provisions of the Selective Training and Service Act, as amended, 50 U.S.C.A.Appendix § 301 et seq. The respondent also filed a motion that the petition for a writ of habeas corpus be dismissed "for the reason that said petition wholly fails to show any illegal imprisonment or restraint of liberty, in that said petition fails to aver or show that the Local Board and Board of Appeal failed to consider relator's evidence or review the facts of his case and that said petition fails to aver or show that relator submitted proof to the Local Board and Board of Appeal that Yeshiva Beth Joseph Rabbinical Seminary was a theological or divinity school 'recognized as such for more than one year prior to the date of enactment' of the Selective Training and Service Act of 1940."

Mortimer J. Rubin (hereinafter referred to as the registrant) contends that his change of classification from IV–D to I–A is an illegal, arbitrary and capricious act on the part of Local Board No. 203, Kings County, Brooklyn, New York, and is contrary to the provisions, rules and regulations of the Selective Training and Service Act.

Section 5(d) of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 305(d), provides:

"Regular or duly ordained ministers of religion, and students who are preparing for the ministry in theological or divinity schools recognized as such for more than one year prior to the date of enactment of `this Act, shall be exempt from training and service (but not from registration) under this Act."

Section 622.44 S.S.R., provides:

"Class IV–D: *Minister of religion or divinity student.* (a) In Class IV–D shall be placed any registrant who is a * * * student preparing for the ministry in a theological or divinity school which has been recognized as such for more than 1 year prior to the date of enactment of

the Selective Training and Service Act. (September 16, 1940)."

The registrant was born in Brooklyn, New York, on May 29, 1923, and registered on June 30, 1942, with Local Board No. 203, Kings County, Brooklyn, New York.

He executed his questionnaire on November 19, 1942, and in it submitted the following information:

Borough of Brooklyn, City of New York, is an Official of our Congregation whose duties are to officiate as the Reader of the Scriptures at the services conducted in our Synagogue on all Saturdays, Holidays and Holy Days and has been officiating as such in our Synagogue for the past five years.

"Mortimer J. Rubin is a Divinity student, attending the Rabbinical Seminary of the Yeshiva Beth Joseph, located at 1427–29—

### Series III.—Education

| Name of Vocational School, College, or University | Course of Study | Length of Time Attended |
| --- | --- | --- |
| Hebrew Academy of Boro Park | Parochial Education | 2 yrs. |
| Yeshiva Toras Emeth | Jewish Parochial School | 1 yr. |
| Rabbi Jacob Joseph School | Jewish Parochial School | 7 yrs. |
| Talmudical Academy | Divinity Studies | 5 yrs. |
| Mesivtah Rabbinical Seminary | Theology | ½ yr. |
| New York University | Speech—Major Sociology—Minor | 1 yr. |

### Series IV.—Present Occupation or Activity

4.(a)  (If a student)  I am majoring in Speech preparing for Ministry at Beth Joseph Rabbinical Seminary—1427—49 St., New York University—Washington Square.

(b)  I expect to complete this training on Sept. 1944.

### Series VI.—Occupational Experience, Qualifications, and Preferences

2.  My usual occupation, or the occupation for which I am best fitted, is the Clergy.

### Series VIII.—Minister, or Student Preparing for the Ministry

2(a) I am a student preparing for the ministry in a theological or divinity school.

(b) I am attending the Beth Joseph Rabbinical Seminary, which was established before September 16, 1939, and is located at 1427—49 St., Brooklyn.

Registrant's Statement Regarding Classification

In view of the facts set forth in this Questionnaire it is my opinion that my classification should be Class 4D.

I officiate in my synagogue in many religious capacities, which is all part of my experience for my profession.  Cong. Sons of Judah—53 St. & 16th Ave.

Complying with the instructions contained in the questionnaire, the registrant brought to the attention of the local board certain letters to assist it in determining his classification.  One letter was from the President of the Congregation of Sons of Judah, incorporated under the laws of New York, and which conducts an Orthodox Synagogue in Brooklyn.  It stated in part as follows:

"This is to certify that Mortimer J. Rubin residing at 1627–53rd Street, in the

49th Street, Brooklyn, N. Y. and is preparing for the Rabbinate."

The secretary of Yeshiva Beth Joseph certified that the registrant "entered our Rabbinical Seminary, Yeshiva Beth Joseph, September, 1942, and is attending daily 9:30 to 5:30."

A letter from the assistant to the Dean of Yeshivath Torah Vodaath & Mesivta stated that the registrant attended its evening session from February, 1942 until July, 1942 and was a student in good standing.

A letter from the administrative assistant of The Rabbi Isaac Elchanan Theological Seminary and Yeshiva College of New York, stated the registrant attended that institution from September, 1937 to January, 1942 and attended classes under four rabbis.

A letter from the secretary of the Rabbi Joseph School of New York stated that the registrant graduated from that school in June, 1936, attended its high school for one year and transferred to the Talmudical Academy of Yeshiva College.

On December 22, 1942, Local Board No. 203 classified the registrant in Class IV–D by a vote of 3–0 and on January 4, 1943, changed his classification to I–A.

On January 23, 1943, the registrant filed with the local board a request for a hearing on his changed classification and a hearing was held on February 2, 1943. The record of that hearing is quoted in full and is as follows:

"Mortimer Rubin, being duly sworn testified as follows:

"Q. Name? A. Mortimer Rubin.

"Q. You got 1A. A. First I had a 4D.

"Q. You asked for a hearing which is your right. Please tell us anything additional that you want to. We have quite all the facts that we need but you may say anything you wish. Now is your opportunity. A. There is nothing further than when I was here last time."

The reading of the minutes of that hearing indicate that anything that might be brought to the attention of the board would not change its decision. The statement of the board that "We have quite all the facts that we need," does not indicate a fair hearing was contemplated by the board.

The registrant appealed February 11, 1943, whereupon the local board wrote to New York City Headquarters of the Selective Service as follows:

"As this registrant is appealing for a 4D classification of the decision of the Board's 1A, we would appreciate it if you would let us have an opinion before we send the file to the appeal board."

On February 24, 1943, Lt. Colonel Knowlton Durham, Chief of the Legal Division, wrote to the local board as follows:

"The case will be referred for an advisory opinion to our advisory panel on theological classifications, and I will advise you further when they have had an opportunity to consider the claim."

On March 15, 1943, the registrant appeared before a special panel on theological classifications. The record of that hearing shows that the registrant never had any occupation, business or trade; that at the age of five years he entered a Hebrew Academy, later studied at Yeshiva Toras Emeth, the Rabbi Jacob Joseph School, Yeshiva College Talmudical High School and that in January, 1942 he entered New York University in order to major in English and take some electives. He testified that while attending New York University during the day from January, 1942 to August, 1942 he pursued his Jewish studies in the evenings at the Mesifta Torah Vodaath. In September, 1942 he entered the Yeshiva Beth Joseph where he attended from 9 to 5:30, and in the evenings attended courses in New York University.

He testified that he expected to graduate from the Yeshiva in June, 1944; that he was interested in doing chaplain work. He testified "I was down at the office (39 Broadway) a few times. They didn't refer me any place and they told me the requirements. I needed a college degree and I had to be ordained and needed a year or two experience."

The record of the panel in part discloses:

"Q. I would like to ask you a very personal question—if you are so anxious to become a chaplain, why don't you join the service now—whether you are a chaplain or not? A. Now of course enlistments are stopped in the Army but before that everyone was permitted to choose that field which best suits him and I expected it to be my vocation and I think I can serve my country best in this phase.

"Q. How long is this Beth Joseph school in existence? A. 2 years.

"Q. Did it have students last year? A. Yes.

"Q. You spent a good deal of time from 1937 to 1942 at the Yeshiva at the high school and at the college, then for this intensified course you transferred to N.Y.U. —didn't it occur to you when you decided to begin as a day session student that you could go back to the Yeshiva and take rabbinical work there? A. Because I was going to N.Y.U. in the evening—it was hard.

"Q. How many college credits did you have by September 1942, approximately? A. I started anew—from scratch.

"Q. How many college credits did you have? A. The first semester from February until May I placed 17 credits to my record and I attended their double summer sessions and put another 15 credits in. In the evening session at N.Y.U. you can't take full credits you can take much less.— I took 14—it is much less.

"Q. Wouldn't it be logical to go back to the Yeshiva where you studied 5 years, and take the Yeshiva work in the daytime and take the college work at the Yeshiva? A. When I started at N.Y.U. I had to take their required course and I hadn't gotten around to my major and minor courses.

"Q. You have quite a number of years before you can get your smicha? A. I expect to get it in June, 1944.

"Q. And you are ready to disrupt your studies to become a chaplain—which is fine. Why don't you go into the Army now, stop your studies and take your studies after? A. That would be the field that I would select.

"Q. Take a law student—he has to disrupt his studies, doesn't he? A. I tried to enlist only as a chaplain because of my experience and because I felt that I could use it there but they felt that I didn't have enough experience.

"Q. You left Yeshiva College and you tried to enroll in the Jewish Theological Seminary? A. No, I decided then that I would continue my rabbinical course at the Seminary. I couldn't possibly have been accepted there—I don't have the pre-requisites.

"Q. If they would have taken you, would you have gone in there? A. Yes.

"Q. Then finding that you didn't have the qualifications there you went to the Beth Joseph Seminary? A. Yes."

On April 16, 1943, the chief of the legal division of Selective Service of New York City Headquarters wrote to the local board as follows:

"On March 15th registrant appeared before a special panel on theological classifications, composed of prominent laymen and rabbis. After reviewing the file and examining the registrant, and upon consideration of all the circumstances, the panel voted to recommend that registrant's status did not warrant his classification in Class IV–D. A transcript of the evidence taken at the hearing is enclosed herewith.

"Of course, while the Local Board should give careful consideration to the recom-mendation of the special panel, formal determination of the registrant's classification must rest with the Local Board itself, or the appropriate appeal agency."

On April 27, 1943, the local board reviewed the registrant's case and continued him in I–A and on May 11, 1943, the registrant appealed.

On May 28, 1943, Board of Appeal No. 7, 32 Broadway, New York, wrote to Local Board No. 203 as follows:

"Although this registrant attended schools of Jewish education since the age of 5 years, we cannot at this time give him a 4D classification.

"The Selective Service Regulations (Section 622.44) specifically states that unless the registrant is 'a student preparing for the ministry in a theological or divinity school which has been recognized as such for more than one year prior to the date of enactment of the Selective Training and Service Act (September 16, 1940), 'he is not entitled to such deferment.

"After a hearing before the Panel on Theological Classifications on March 15, 1943, it was their conclusion and recommendation that the registrant did not warrant his classification in IV–D, and we are in agreement with them.

"Therefore, on all the above facts, the registrant has been placed in Class I–A."

On June 7, 1943, the registrant's father asked for a reopening of his son's case. Four affidavits were submitted with this request. One affidavit signed by the president of the Congregation and Hebrew School Sons of Judah stated in substance that the registrant had been functioning as official reader (Bal Korah) of the Holy Scrolls on the sabbath, holy days, festivals and fast days in that congregation for a period of seven years and the registrant had been a divinity student all his life and had been and is training for the rabbinate.

An affidavit of the rabbi of the Congregation Sons of Judah, who had been a rabbi of that congregation for sixteen years, stated that he knew that the registrant "is a bona fide divinity student."

An affidavit of the chairman of the board of governors of the Congregation and Hebrew School Sons of Judah stated that he knew the registrant for a period of fifteen years; that he had been functioning as official reader of the Holy Scrolls in that congregation for a period of seven years

and "has been a divinity student all his life and has been and is training for the rabbinate."

The minutes of the local board of June 10, 1943, read as follows:

"Board reviews new data submitted by father of registrant. Case reopened, subj. to further opinion of new evidence from Hdqs."

On June 18, 1943, the local board sent a letter to the Director, Selective Service, New York City Headquarters, stating the affidavits submitted by the registrant were reviewed by the board which decided to reopen the case and that the chairman had directed that the file be submitted to the Director for a further opinion before the final decision is made by the local board.

On June 29, 1943, Lt. Colonel Knowlton Durham wrote to the local board and informed it that it was without authority to reopen and consider the registrant's classification anew because the request to reopen did not comply with the provisions of Section 626.2(a) of the regulations and further that the letter of June 7, 1943, and the affidavits above referred to did not contain any information of material facts not considered when the registrant was classified.

On July 3, 1943, the local board wrote to George R. Rubin and stated that the registrant's case had been returned by the legal division with information to the effect that the local board was without authority to reopen the case and that the registrant's I–A classification was being continued.

The minutes of the local board of July 15, 1943, show "Case referred to Bd. by A. Agt. Simpson—Application of Reg. for reopening denied. 4-0."

On July 16, 1943, the registrant requested the local board to reopen his case and reconsider it in view of the evidence submitted by him and change his classification from I–A to IV–D as he was originally classified.

On July 22, 1943, the local board by a vote of 3–0 denied the registrant's application to reopen his case and on July 23, 1943, notified him that he would be subject to induction on July 27th.

On July 27th, 1943, William Nemecek, Selective Service Liaison, sent a memorandum to the Commanding Officer, Armed Forces Induction Station, that by direction of Colonel Arthur V. McDermott, Director, the induction of the registrant was "postponed".

On August 21, 1943, the local board wrote to the Director of New York City Headquarters as follows:

"On application of the registrant for further discussion of his case the file was placed before the board at their meeting of August 19th, 1943.

"The Board went over the entire file again at this meeting. The original information as well as all other statements submitted by the registrant were carefully reviewed. In addition, full consideration was given to the conclusion and recommendation of the Panel on Theological Classifications as a result of the hearing on March 15th, 1943; and the decision of the Board of Appeals affirming the I–A Classification with their opinion dated May 28th, 1943.

"It is the decision of the Board that all possible data in the case has been placed at their disposal in order to make their decision and that no further discussion of the case with the registrant seems warranted.

"We are, therefore, notifying you herewith that the case of Mr. Rubin will not be reopened by this Board."

Pursuant to Section 626.2(a) (1), S.S. R., the registrant on September 15, 1943, requested his local board to reopen his case and submitted a verified certificate of New York University to the effect that at the time of his matriculation on January 21, 1942, he stated he was preparing for the rabbinate; affidavits of George R. Rubin, Norman B. Abrams, Registrar of The Rabbi Isaac Elchanan Theological Seminary, Rabbi Samuel Quinn, Assistant to the Dean of the Mesifta Talmudical Seminary, Rabbi Kurt Klappholz, Executive Director of the Beth Joseph Rabbinical Seminary, Rabbi Max Kirshblum, Secretary to the Mizrachi Organization of America, Inc., Rabbi Jacob D. Gordan, Rabbi Mordecai A. Kaplan and William Weingarden. These affidavits contained evidence that the registrant since the age of five years attended divinity institutions; that he was never engaged in business or trade; that he would obtain his Rabbinical ordainment in June, 1944.

The affidavit of Rabbi Kirshblum stated in part:

"I am personally familiar with all of the institutions which he has attended and all of such institutions except that of New York

University, which he merely attended for one semester and during which same time he also attended The Mesifta Talmudical Seminary, are duly recognized Theological Institutions and his attendance therein has been in good faith."

The local board also had before it the affidavit of Rabbi Kurt Klappholz which stated:

"I am the Executive Director of Yeshiva Beth Joseph Rabbinical Seminary, which is a divinity school duly recognized and duly chartered by and with the State Department of Education of The University of the State of New York.

"Mortimer Rubin, of 1627—53rd Street, Brooklyn, New York, is a registered and regularly attending student of the seminary, attending daily from 9:30 A.M. to 5:30 P.M., leading to Rabbinical ordainment.

"He entered and was admitted to the Rabbinical Seminary Yeshiva Beth Joseph in September 1942, after an examination into his back-ground, prior scholastic attendances, standing and record and after establishing his qualifications for study leading to Rabbinical ordainment.

"Mortimer Rubin will be ordained in June 1944."

On September 16, 1943, the local board reviewed the file and additional evidence submitted under date of September 15, 1943, and affirmed its decision of I-A classification by a vote of 4-0 and on September 17, 1943, notified the registrant of its decision.

On September 28, 1943, the New York City Director wrote to the local board to forward the registrant's file to him for review and ordered it to stay and postpone the induction of the registrant which had been set for September 29, 1943, until "our investigation can be completed."

On October 29, 1943, Lt. Colonel Durham wrote to the local board:

"On October 12th registrant and his father appeared before the advisory panel on theological classifications and thereafter on October 17th registrant's father and four other witnesses appeared before the panel in behalf of the registrant. After reviewing the entire record and upon consideration of the circumstances, the panel voted unanimously to reaffirm its recommendation of March 15th that registrant's status did not warrant his classification in Class IV-D.

"This Headquarters is satisfied that the registrant has been properly classified by the Local Board and Board of Appeal. Accordingly, no further action is contemplated in the matter."

The registrant was inducted on November 17, 1943, in New York and was assigned to the United States Naval Training Station, Newport, R. I., on November 26, 1943.

The "Yeshiva Beth Joseph Rabbinical Seminary Byalistok-Novarodok" was granted a provisional charter by the Board of Regents of the University of the State of New York on July 24, 1942 (Ex. 1). It was stipulated that it started to function in this country on August 28, 1941.

A certificate (Ex. 2) of M. Kwapiszewski, Minister Plenipotentiary, Counselor of the Polish Embassy stated:

"This Embassy hereby certifies that the Rabbinical Seminary 'Beth Joseph' was founded in the year 1891 in Nowogrodek, Poland, by Rabbi Joseph Horowitz. This institution of Talmudical learning has been conducted since 1922 by Dean Rabbi Abraham Jofen, who has organized 29 branches of 'Beth Joseph' throughout the Eastern part of Poland.

"At present the Rabbinical Seminary 'Beth Joseph' is located at 1427-29—49th Street, Brooklyn, N. Y. and is headed by Rabbi Abraham Jofen."

The war caused the Yeshiva to abandon its activities in Poland in 1939 and it was established in this country as stated above.

There was testimony to the effect that many rabbis in this country were graduates of the Yeshiva Beth Joseph and that the greatest rabbis of Poland were among its graduates and that many of them had been ordained by Dean Rabbi Abraham Jofen.

Rabbi L. Predemesky testified that he was an ordained rabbi for twenty-nine years and a member of the Union of Orthodox Rabbis of the United States and Canada; that the Yeshiva was in existence about fifty years and all that time functioning as such and that a certificate from Dean Jofen is recognized by Orthodox Jews.

Rabbi Abraham Kagan testified that about thirty-four years ago he attended the Yeshiva and was a student of Dean Jofen; that the Yeshiva is well known all over the world and that its reputation is the best.

Rabbi Leo J. Cogan testified that he went from the United States to Poland to study at the Yeshiva and was ordained by Dean Jofen.

In Selective Service in Wartime, Second Report of the Director (Lewis B. Hershey) of Selective Service, 1941-42, (Ex. 7) at page 241, it states:

"Exemption from training and service was also extended to students who are preparing for the ministry in theological or divinity schools. These schools had to be recognized as such for more than one year prior to the date of enactment of this act. The term 'recognition of such schools' means not the approval by educational accrediting agencies, but recognition by a denomination of the school as leading into the ministry of the denomination. It, therefore, included a wide range of types of institutions and grades of institutions under the term 'theological or divinity school'. The same wide extension of the term 'studying for the ministry' in theological and divinity schools was that applied to the term 'ministers of religion' was followed here. Courses might be as brief as 1 year or might extend over a period of from 11 to 15 years. The wording of the statute opens the way for such interpretation."

On October 10, 1943, National Headquarters, Selective Service System, issued Local Board memorandum No. 187, (Ex. 8) which stated:

"1. *When a student is entitled to classification in Class IV–D.*—A registrant is entitled to classification in Class IV–D as a student preparing for the ministry, only when the following two facts have been determined to exist:

"(a) The registrant is a student preparing for the ministry, and

"(b) Is in a theological or divinity school which has been recognized as such for more than 1 year prior to the date of enactment of the Selective Training and Service Act (September 16, 1940).

"2. *Local board to make determinations.*—The local board is charged with the primary responsibility of determining whether a registrant and the theological or divinity school which he is attending fulfill the above requirements of the Act and the regulations.

"3. *'Preparing for the ministry' defined.*—A registrant may be considered as a student 'preparing for the ministry' when he is actually pursuing a full-time course of study and it is evident that he is preparing himself to become a regular or duly ordained minister of religion as defined by section 622.44(b) and (c) of the regulations.

"4. *Predeterminations concerning schools made by The Director of Selective Service.*—A local board, a State Director of Selective Service, or another agency of the Selective Service System may desire, in certain cases, to request the Director of Selective Service to make a predetermination as to whether a theological or divinity school was recognized as such for more than 1 year prior to September 16, 1940. All such requests should be forwarded to the Director of Selective Service through the State Director of Selective Service.

"5. *List of recognized theological or divinity schools.*—The Director of Selective Service has predetermined that certain theological or divinity schools were recognized as such for more than 1 year prior to September 16, 1940. A list of these recognized schools has been transmitted to all State Directors of Selective Service. It will be revised from time to time as other predeterminations are made by the Director of Selective Service. Upon inquiry, State Headquarters will advise the local board whether a particular school is or is not upon such list. This list does not include a number of theological or divinity schools which undoubtedly would be eligible to receive a favorable predetermination by the Director of Selective Service if a request was made for such a predetermination. The fact that a particular theological or divinity school does not appear on this list should not be taken to mean that it is not a recognized theological or divinity school."

Lt. Colonel Durham testified that there was nothing in the Act providing for a theological panel or authorizing such a body as was used in the instant case; that it exists only in New York and was created by New York Headquarters to assist boards and advise them in cases involving divinity students. He also testified that at none of the three hearings of the registrant before this panel was a majority of its twenty-two members present.

He further testified that "we never questioned the status of the school (Yeshiva Beth Joseph) in Poland." On June 12, 1943, he wrote a letter to the Dean of Yeshiva Beth Joseph and asked him the

number of students attending the Yeshiva and was informed that there were ten students. He stated that the New York Selective Service Headquarters accepted the Dean's certification of them and that they were given a IV–D classification by local boards other than the local board of the registrant.

The local board had before it the statement of the registrant that he was preparing for and intended to enter into the ministry of a recognized religious organization. It also had before it uncontradicted evidence that the registrant was a bona fide student preparing for the ministry in a divinity school which furnished a certificate stating that the registrant "will be ordained (as a Rabbi) in June 1944."

The record discloses that at the time of Pearl Harbor and for many years prior the registrant was a serious student preparing in good faith for a career in the ministry. The good faith of the registrant in this regard has not been challenged by the respondent.

The respondent presented no oral testimony and rested his case on the record of the local board. Neither did he offer any explanation why other students attending Yeshiva Beth Joseph were given IV–D classification and this registrant was given I–A classification.

■ The respondent's opposition to the issuance of the writ of habeas corpus is that the registrant submitted no proof to the local board that the divinity school he was attending was recognized as such for more than one year before the enactment of the Selective Training and Service Act. This contention does not impress the court especially in view of the testimony of Lt. Colonel Durham that New York City Selective Service Headquarters on January 12, 1943, considered the Yeshiva Beth Joseph a theological or divinity school within the meaning of Section 622.44(a), S.S.R., and had so informed Local Board No. 173 of Brooklyn, N. Y.

In Johnson v. United States, 8 Cir., 126 F.2d 242, 247, the court said:

"Appellant's complaint here, as below, is that the local board acted arbitrarily in not classifying him in IV D. No such board can bind a registrant by an arbitrary classification against all of the substantial information before it as to his proper classification. The Act and the Regulations afford him a proper and a sufficient remedy by giving him a right to an appeal to the appeal board which has power to undo any injustice in or any mistake in classification. * * * It is only when administrative remedies have been denied or are exhausted that the courts are available. Also, the courts are even then available only for limited purposes. The courts have no power to classify registrants—that is solely for the agencies created by or under the authority of the Congress. But classification by such agencies must, under the powers given them by Congress, be honestly made, and a classification made in the teeth of all of the substantial evidence before such agency is not honest but arbitrary. Courts can prevent arbitrary action of such agencies from being effective. But a registrant cannot come to a court for such relief until he has exhausted all available and sufficient administrative remedies for such arbitrary action. * * *"

■ The registrant duly took and exhausted all administrative remedies for relief and responded to the call for induction before the filing of this petition for a writ of habeas corpus. United States v. Grieme, 3 Cir., 128 F.2d 811; United States v. Downer, 2 Cir., 135 F.2d 521; United States v. Kauten, 2 Cir., 133 F.2d 703; Graf v. Mallon, 8 Cir., 138 F.2d 230; Albert v. Goguen, 1 Cir., 141 F.2d 302; Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346.

Congress clearly provided by § 5 of the Act that regular or duly ordained ministers of religion, and students who are preparing for the ministry in theological or divinity schools recognized as such for more than one year prior to the date of enactment of the Act shall be exempt from training and service (but not from registration) under the Act.

It is difficult to conceive a set of facts that would more clearly establish the intent and good faith of a person to become a minister of his denomination than those in the instant case. The travel of this case indicates that the local board had a difficult decision to make and I am convinced that the local board was unduly influenced by the advisory opinion of the theological panel.

■ I find that the registrant is a student preparing for the ministry in a theological or divinity school which has been recognized as such for more than one year prior to the date of enactment of the Selective Training and Service Act and

that he is within the purview of § 5 of said Act.

I find that the registrant's classification of I–A "was made in the teeth of all the substantial evidence" before the local board and the appeal board.

I find that the registrant's change of classification from IV–D to I–A was an arbitrary, capricious and illegal act on the part of the local board.

I find that the registrant was erroneously denied the benefits of the exemption he claimed and which he sustained by substantial evidence and that the local board and the appeal board, under the circumstances, committed an error of law.

Basic principles of justice require that the respondent's motion to dismiss be denied and that the petition for a writ of habeas corpus be sustained.

It is so ordered.