Petition of Aaron BARR For a Writ of Habeas Corpus

v.

Robert W. WEISE, Adjutant General, Department of the Army, U. S. Army Administration Center, St. Louis, Missouri; Stanley R. Resor, Secretary of the Army, Pentagon, Washington, D. C.; Macon A. Hipp, Colonel, Commanding Officer, Fort McClellen, Anniston, Alabama.

No. 68 Civ. 3051.

United States District Court
S. D. New York.

Aug. 26, 1968.

On Rehearing Oct. 10, 1968.

8

8

Linden & Deutsch, New York City, for petitioner; David Blasband, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for respondents; Patricia M. Hynes, Asst. U. S. Atty., of counsel.

### MEMORANDUM

TENNEY, District Judge.

Petitioner, pursuant to 28 U.S.C. § 2241, seeks a writ of habeas corpus to restrain his alleged unlawful detention by the United States Army, and to obtain judicial review of the denial by the Department of the Army (hereinafter referred to as "the Army") of his application for discharge based on his status as a full-time student of the ministry in the Church of Scientology.

The facts indicate that in May, 1965, petitioner enlisted in the Army National Guard. Upon completion of six months' active duty, he was assigned to the Army Reserve. In the fall of 1967, petitioner became a member of the Founding Church of Scientology, located in the City of New York, and in November of that year enrolled as a full-time student of the ministry in the Academy of Scientology, the Church's affiliated divinity school. On November 29, 1967, petitioner, pursuant to Department of the Army Circular No. 135–10, paragraph 17(b) (2),[1] filed an application for discharge,

---

[1] "Theological or divinity students. Applications for discharge from theological or divinity students will be substantiated by a statement from the appropriate

attached to which was a supporting statement from the Reverend H. Thomas, President of the New York Church of Scientology, attesting to the fact that petitioner was a full-time student pursuing satisfactorily a course of study which would qualify him as a regular or duly ordained minister of religion. In addition, Reverend Thomas stated that the Church of Scientology of New York is a duly recognized religious corporation pursuant to the Religious Corporations Law of New York.[2]

On February 13, 1968, the Army denied petitioner's application. Subsequently, petitioner again requested a discharge, alleging that he was a full-time divinity student. Attached to this second application was a letter from the Reverend Ronald F. Shafran, Acting Chaplain and Director of Ministerial Training, stating that petitioner was a full-time divinity student whose steady progress and "good ethical record" would make him eligible for ordination as a minister of religion of Scientology upon completion of his studies.

In response to this application, the Army informed petitioner that while the regulations provide for the discharge of individuals pursuing satisfactorily a full-time course of instruction leading to their ordination, it was the opinion of the Army that petitioner's application did not satisfy the requirements of this provision in that "the Scientology Center is not listed in the Educational Directory published by the Department of Health, Education and Welfare, or currently recognized by that department * * *."

Thereafter, petitioner, pursuant to 10 U.S.C. § 673(a), was ordered to report for active duty commencing June 26, 1968. This reporting date was postponed pending the consideration of petitioner's third application which, on July 24, 1968, was similarly denied. By order to show cause, dated July 26, 1968, petitioner then commenced the within proceedings.

■ Although petitioner herein is not presently under physical confinement, he, being subject to the orders and supervision of the Army, is "in custody" within the meaning of 28 U.S.C. § 2241. Hammond v. Lenfest, 398 F.2d 705 (2d Cir., June 10, 1968).

■ The applicable scope of review in the instant case is limited to the determination of whether there is any basis in fact for the Army's denial of petitioner's application. United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Hammond v. Lenfest, supra;[3] United States v. Corliss, 280 F.2d 808, 810–811 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960).[4]

■ Department of the Army Circular No. 135–10 requires that an application for discharge from theological or divinity students be properly substantiated by the appropriate authority of the institution. There is no requirement either in the regulations or in any statute that the institution concerned be "approved", "recognized", or "listed". Respondent argues that while the requirement of attendance at a "recognized" theological or divinity school with regard to *deferments* and *exemptions*

---

authority of the institution indicating that the individual is in fact enrolled and pursuing satisfactorily a course which will qualify him as a regular or duly ordained minister of religion."

2. N.Y. Religious Corporations Law, McKinney's Consol.Laws, c. 51, Art. 8 (McKinney 1952).

3. In Hammond v. Lenfest, 398 F.2d 705 (2d Cir., June 10, 1968), and Mankiewicz v. Ray, 399 F.2d 900 (2d Cir. July 16,

1968), both cases dealing with applications for *discharge* from military service, the Court of Appeals cites with approval cases pertaining to *exemptions* and *deferments* in which the "no basis in fact" standard was enunciated.

4. The "no basis in fact" test has recently been codified in 50 U.S.C. App. § 460 (b) (3), as amended, Pub.L. No. 90–40, § 8(c) (June 30, 1967).

from the military service [5] does not apply to those already in the Armed Services, nevertheless, the Secretary of the Army may, in the exercise of the power granted him under 10 U.S.C. § 3811(b), follow a similar policy toward discharges. The fallacy of the respondent's argument is apparent. The Court of Appeals in Hammond v. Lenfest, supra, clearly stated that "a validly promulgated regulation binds the government as much as the individuals subject to the regulation." Since neither its own regulations nor the Universal Military Training and Service Act requires that the theological or divinity school in question be "recognized", there was no basis in fact for the Army's denial of petitioner's application.

Even assuming, *arguendo*, that the requirement that the institution be "recognized" were applicable in this instance, using the Department of Health, Education and Welfare's "Education Directory" [6] as the sole criteria for making the discharge determination would have been a totally arbitrary application of that standard. The "Education Directory" is a publication which lists those institutions of higher education in the United States which are legally authorized to offer and are offering at least a two-year program of college-level studies in residence, have submitted the information required for listing, and have met other specified criteria.[7] By denying petitioner's application solely on the basis of the exclusion of the Academy of Scientology from the "approved list", an exclusion that may have resulted from the school's failure to submit the required information, rather than from academic deficiency, the Army capriciously neglected to consider either

the standards set by the Academy of Scientology or the established character of the Church of Scientology of New York. See United States ex rel. Rubin v. Magruder, 55 F.Supp. 947, 955 (D.R.I. 1944).

As noted herein, the Church of Scientology of New York is a duly recognized religious corporation under the laws of the State of New York. It has been in existence since November 15, 1955. The membership of the Church of Scientology throughout the United States has grown to between 75,000 and 100,000 parishioners. It is estimated that there are approximately 500,000 members in the various Churches of Scientology throughout the world. The duties and functions of its ministers are similar to those of the clergy of other religious denominations. Thier ministers hold services every Sunday, officiate at funerals, christenings and weddings, counsel their parishioners, and conduct confessionals. The Church has three ministers duly licensed by the State of New York as well as other ministers licensed by other states. There are some 50 full-time students in the Academy of Scientology who devote approximately 35 to 40 hours per week to their training. Their course of study includes instruction in the basic tenets of their Church and its system of ethics, and on the methods of counseling parishioners as to their personal, spiritual and ethical affairs. In order to qualify as a minister, students must pass oral and written examinations.

Although respondent questions the motives and good faith behind petitioner's enrollment as a full-time divinity student, that issue is irrelevent to the instant petition in that the Army's de-

5. 50 U.S.C. App. § 456(g); 32 C.F.R. § 1622.43.

6. U.S. Dep't of Health, Education and Welfare, Education Directory—Part 3 Higher Education (1967).

7. Other criteria specified in the "Education Directory" are as follows:
   "1. Institutions accredited or approved by a nationally recognized accrediting

agency, by a State department of education, or by a State university are eligible for inclusion. [Footnote omitted.]
"2. Institutions not meeting requirements of criteria are eligible for inclusion if their credits have been and are accepted as if coming from an accredited institution, by not fewer than three accredited institutions." Id. at 1.

termination was based solely on the fact that the Academy of Scientology had not been listed in the "Educational Directory" published by the Department of Health, Education and Welfare nor then recognized by that Department.

■ Inasmuch as petitioner complied in all respects with the applicable Army regulations, and since the Army's determination was arbitrarily reached, this Court directs that petitioner's application for a writ of habeas corpus be granted and petitioner be discharged from the United States Army Reserve forthwith.

So ordered.

### On Reargument

This is a motion by defendants for reargument[1] from a prior order of this Court, dated August 26, 1968, which granted petitioner's application for a writ of habeas corpus[2] and ordered his discharge from the United States Army Reserve (hereinafter referred to as "the Reserve"). Petitioner, pursuant to Army Circular No. 135–10, ¶17(b) (2),[3] had filed his application for discharge from the Reserve based on his status as a fulltime student pursuing satisfactorily a course of study which would qualify him as a regular or duly ordained minister of religion. The Army denied petitioner's application on the ground that the Academy of Scientology, the school which petitioner attended, was not included on a certain list of schools of higher education compiled by the Department of Health, Education and Welfare, and, therefore, not "recognized" by that Department. Inasmuch as neither Army Circular No. 135–10, ¶17 (b) (2) nor any statute considered by this Court at that time specifically required that a school be either "approved", "recognized" or "listed" as a prerequisite to the discharge of a

divinity student, this Court found that there was no basis in fact for the Army's denial of petitioner's application.

Defendants allege herein that the following matters were not brought to the attention of this Court at the time of its prior consideration:

1. Title 10 U.S.C. § 685, which provides:

"A Reserve may not be required to serve on active duty, or to participate in inactive duty training, while preparing for the ministry in a recognized theological or divinity school."

2. Title 32 C.F.R. § 125.5(b), which provides:

"Any Ready Reservist who is preparing for the ministry in a recognized theological or divinity school shall be transferred to the Standby Reserve unless he executes a written agreement to remain in the Ready Reserve for a minimum of one year, as provided in DoD Directive 1205.6, 'Assignment to and Transfer between Reserve Categories, and Discharge from Reserve Status'."

3. On April 5, 1968, Army Reg. 601–25, ch. 1, § III h.(3) (e) was amended to provide:

"For the purpose of religious training a recognized theological or divinity school is one recognized by the particular religious sect as being such a school. Such recognition does not in itself qualify a divinity school student for appointment in the Chaplains' branch."

4. On August 26, 1968, the petition for rehearing in Hammond v. Lenfest [398 F.2d 705], No. 31909 (2d Cir., June 10, 1968), was granted and the matter remanded to the Department of the Navy "with directions

---

1. U.S.Dist.Ct. S. & E.D.N.Y. (Gen.) R. 9(m).

2. 28 U.S.C. § 2241.

3. *"Theological or divinity students.* Applications for discharge from theological or divinity students will be substantiated

by a statement from the appropriate authority of the institution indicating that the individual is in fact enrolled and pursuing satisfactorily a course which will qualify him as a regular or duly ordained minister of religion."

that Hammond's application be processed in accordance with the new regulations."

The issues now before this Court are whether these matters are relevant to the petition herein and, if so, whether they affect the prior order of this Court.

■ The new definition of a "recognized" theological or divinity school, appearing in Army Reg. 601–25, applies solely to the "policies, criteria, and procedures governing *the delay in reporting for active duty,* or *exemption from active duty,* for members of the Army National Guard of the United States (ARNGUS) and of the Army Reserve (USAR)." Army Reg. 601–25, ch. 1, § 1 1–1 (emphasis added). Since 10 U.S.C. § 685 *exempts* a student preparing for the ministry in a recognized theological or divinity school from *active* or *inactive duty training,* and since 32 C.F.R. § 125.5(b) provides for the *transfer* of students preparing for the ministry in a recognized theological or divinity school, from the Ready Reserve to the Standby Reserve, this definition of a "recognized" school may apply to these in-service exemptions or transfers. However, neither the statute nor the regulations relied upon by defendants applies to applications for *discharge* from the Reserve. It is significant, in this respect, that both the regulations and the statute are, on their face, given specific and limited coverage.

The defendants also refer to 32 C.F.R. § 561.37(c) (16), which states that:

"Authority to discharge enlisted reservists for the following reasons is delegated to officers comparable to those authorized to discharge persons on active duty:

"Upon application by an obligated reservist who is pursuing theological studies, obtaining ordination, or taking final vows in a religious order which requires separation from military status as a prerequisite to such training or taking of final vows. Application must be accompanied by a statement, signed by the appropriate official of the seminary or religious order, substantiating his request. Discharge will not be effected without prior approval of The Adjutant General."

■ This regulation, however, in applying to applications for *discharge* from the Reserve, as is the case with Army Circular No. 135–10, ¶17(b) (2), does not require that the applicant be enrolled in a "recognized" school.

■ The Court, in Hammond v. Lenfest, supra, finding not a "scintilla of evidence challenging the sincerity or depth of Hammond's * * * beliefs", ordered his release from the Navy unless some evidence was introduced "during the District Court hearing to provide a basis in fact for the denial of his request for a discharge." Since the newly-adopted Naval regulations made major improvements in the procedures relevant to the application therein, the Court subsequently remanded the case to the Naval authorities with directions that Hammond's application be processed in accordance with the new regulations. Hammond v. Lenfest, 398 F.2d 705 (2d Cir., Aug. 26, 1968). In this instance, however, the newly-adopted Army regulations are, as previously noted, not applicable to the present application, but only to delays in reporting for active duty or to exemptions from active duty. Consequently, the defendants' reliance on the subsequent order of the Court of Appeals in Hammond v. Lenfest, id., is ill founded.

Accordingly, there being no basis in fact for the denial of petitioner's application, defendants' motion for reargument is granted, and, upon reargument, the prior order of this Court is adhered to.

The stay of the prior order of this Court, heretofore granted, shall be continued for a period of thirty (30) days to allow defendants an opportunity to appeal from the order herein.

So ordered.