**COLLINS v. BIRON et al.**
Civil Action No. 461.

District Court, S. D. Alabama, S. D.
Aug. 16, 1944.

Pillans & Cowley by John H. Tappan, both of Mobile, Ala., for petitioner.

A. J. Tulley, U. S. Atty., and Alvin Mc-Connell, Asst. U. S. Atty., both of Mobile, Ala., for respondents.

McDUFFIE, District Judge.

George Collins, a Jehovah's Witness, registered with Local Board No. 4, Mobile, Alabama, and, in filling out and filing his Selective Service Questionnaire and his Special Form for Conscientious Objectors under date of December 9, 1942, claimed exemption from the Selective Training and Service Act, 50 U.S.C.A. Appendix, § 301 et seq., because of his claim that he was an ordained minister of Jehovah's Witnesses, and claimed also the right to classification in Class IV-E as a conscientious objector to both combatant and noncombatant service under military direction.

Registrant was classified in Class IV-E on January 26, 1944, and applied, in accordance with regulations, to the local board for a reopening and reconsideration of his case on the grounds that the evidence produced by him in making such application was evidence which had not heretofore been considered, which, if true, would justify a change in his classification to that of a regular minister. The local board refused to reopen the case. Subsequently and on the 9th day of May, 1944, the National Director of Selective Service assigned Collins to work of national importance at Civilian Public Service Camp 111, Mancos, Montezuma County, Colorado, on June 8, 1944, whereupon, pursuant to the regulations, the local board notified Collins to this effect and ordered him to report to the local board at 8:30 A.M. on the 5th day of June, 1944. Collins so reported, but did not proceed to the camp to which he had been as-

signed, and promptly, before the day set for departure, filed his petition for writ of habeas corpus, alleging in substance that he had been arbitrarily and capriciously classified in Class IV–E instead of Class IV–D as a minister.

The members of the draft board, who were named as respondents in the petition here, and the office of the District Attorney representing them, have taken the position that Collins was not entitled, as a matter of law, to a writ of habeas corpus until he first reported to the camp to which he had been assigned and placed himself in the custody of the director of that camp. Such position, or contention, presents the only question now at issue, the question of jurisdiction of this Court to entertain the petition.

This Court, not agreeing with this contention, ordered the members of the draft board to make further answer, and accordingly the members of the board did make further answer and denied that the classification of IV–E, upon which was grounded the assignment to work of national importance, was the result of arbitrary or capricious conduct. After the hearing had begun and before it was concluded, Collins amended his original petition in two material aspects, whereupon the respondents, by appropriate motion, applied for permission of the Court to withdraw their answer to the merits and to refile their answer relying upon lack of jurisdiction of the Court, and to be allowed to rest their case upon that issue. The Court granted this application, allowing the respondents to rest their case upon the question of jurisdiction, a final order granting the writ of habeas corpus was entered, and, on the allegations of the petition, Collins was discharged. The question of fact, therefore, as to whether or not Collins was given his classification arbitrarily and/or capriciously does not now arise, and will not be heard unless the Appellate Court decides this Court has authority to hear the petition filed in this cause.

The Selective Training and Service Act provides that a person who is either a regular minister of religion or a duly ordained minister of religion shall be classified in class IV–D and is exempt from training and service under the Act. Selective Service Regulation 622.44 provides as follows:

"(b) A 'regular minister of religion' is a man who customarily preaches and teaches the principles of religion of a recognized church religious sect, or religious organization of which he is a member, without having been formally ordained as a minister of religion; and who is recognized by such church, sect, or organization as a minister.

"(c) A 'duly ordained minister of religion' is a man who has been ordained in accordance with the ceremonial ritual or discipline of a recognized church, religious sect, or religious organization, to teach and preach its doctrines and to administer its rites and ceremonies in public worship; and who customarily performs those duties." which have been applied to Jehovah's Witnesses by National Director Lewis B. Hershey in the following language:

"The members of Jehovah's Witnesses, known by the various names of members of the Bethel Family, pioneers, regional servants, zone servants, company servants, sound servants, advertising servants, and back-call servants, devote their time and efforts in varying degrees to the dissemination of the tenets and beliefs of Jehovah's Witnesses. The deference paid to these individuals by other members of Jehovah's Witnesses also varies in a great degree. It is impossible to make a general determination with respect to these persons as to their relationship to Jehovah's Witnesses. Whether or not they stand in the same relationship as regular or duly ordained ministers in other religions must be determined in each individual case by the local board, based upon whether or not they devote their lives in the furtherance of the beliefs of Jehovah's Witnesses, whether or not they perform functions which are normally performed by regular or duly ordained ministers of other religions, and, finally, whether or not they are regarded by other Jehovah's Witnesses in the same manner in which regular or duly ordained ministers of other religions are ordinarily regarded."

The Selective Training and Service Act also provides that a person who, by reason of religious training and belief, is conscientiously opposed to war in any form shall be classified as a conscientious objector. It further provides that, if his objection goes only to combat service, he shall be classified in Class I–A–O and be subject to induction into the Army and there assigned to non-combat duty; and that if his conscientious objection goes to both combat and non-combat service under

military direction, he shall be classified in Class IV–E and be subject to assignment to work of national importance under civilian direction.

The Selective Training and Service Act specifically provides for the procedure by which a conscientious objector shall be classified and provides that if the claim as a conscientious objector is not allowed by the local board, an appeal may be taken to the Appeal Board, which cannot deny the claim for classification as a conscientious objector without first referring the matter to the Department of Justice for inquiry and hearing with respect to the character and good faith of the objection of the person concerned. In practice, this inquiry is conducted by the Federal Bureau of Investigation and the hearing is subsequently held by the Hearing Officer and the registrant notified of the time and place of such hearing, and allowed to produce any witnesses he desires to produce; and after such hearing, the Hearing Officer makes his report and recommendation to the office of the Attorney General, who in turn makes a recommendation to the Board of Appeal as to whether or not the registrant should be classified as a conscientious objector, and if so, whether such classification should be I-A-O or IV-E.

The Selective Service regulations also provide that a registrant's classification may be reopened and considered anew, with the following language:

"(a) The local board may reopen and consider anew the classification of a registrant (1) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any interested party in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (2) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (Form 150) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

"(b) At any time before the induction of a registrant, the local board shall reopen and reconsider anew such registrant's classification upon the written request of the State Director of Selective Service or the Director of Selective Service."

This Court is not unmindful that many learned Judges have held and entertained views contrary to those herein expressed. It is not easy to disagree with such eminent authorities, yet the conviction of this Court constrains it to disagree and to feel that its reasons for, or conclusions on, such disagreement should be set out in the following memorandum of opinion.

The Judges of our Courts are human beings, subject to those human frailties, such as innate prejudices, passions, and those sympathies which arise in the hearts and minds of their fellowmen. While this Court may, like other men, hold in contempt those who enjoy blessings and privileges of the American Government and refuse to defend its flag for any reason; while this Court may not agree that the reason assigned by the petitioner in this case is well founded or reasonable, yet, the right to assign those reasons, the right to be heard, is a right that must be sustained by the Court. Simply stated, the question is not what is said by the petitioner, but his right to say it, and such a right, sought in this case, must be sustained for one who claims to be a minister, whether he be of one religious sect or another.

Amongst rights of American citizens under our form of Constitutional Government, no right is treasured more than the right of every citizen to have his day in Court. Courts are instituted with the responsibility and high duty to see that this, as well as all fundamental rights, are maintained inviolate.

Traditionally, under our judicial procedure, a defendant has always enjoyed the right to offer his defense, for whatever it may be worth, in Court before twelve of his peers who pass, under the instructions of the Court, upon the honesty, sincerity, and validity of his defense. A conscientious objector under our system of court procedure should not be denied the same rights accorded any other defendant charged with a felony. Though indicted by a Grand Jury, brought into Court under a felony charge, a conscientious objector is denied the right to offer any excuse or defense for his failure to obey the order of the

board, unless possibly it be he was providentially detained, or prevented from so doing. It is difficult for this Court to hold that such procedure is in keeping with our American ideals of the administration of justice.

Under the precedents laid down by the Appellate Courts and, indeed, the Court of last resort in the nation, notably in the Falbo case, Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, the only opportunity for a minister or conscientious objector to have the question of classification passed upon by a Court is through a writ of habeas corpus, to be filed after the petitioner has submitted himself to the control and custody of the constituted authorities of the Army.

It is held that one must, and should, first exhaust all his remedies—which means administrative remedies—before he may have a Court review his classification. In this cause the petitioner has exhausted all his administrative remedies under the Selective Service Act, and is now in the custody of the Selective Service authorities whose final order he must obey or go to the penitentiary. While neither the Congress nor the regulations so specify, the Act and the regulations have been interpreted to mean that a registrant must subject himself to other authorities and other custodians before he has a right to test his classification. This Court thinks this means he must give up a right to his day in Court in order to ask for that right a later day, and in some far-removed Court. Though already restrained of his liberty by the board, he must be further restrained to assert his legal rights.

The petitioner in this cause was faced with either carrying out the final order of the Selective Service Board or subjecting himself to criminal prosecution for felony with possible sentence of five years to the penitentiary for wilfully and intentionally disobeying the order of the Board without an opportunity to present, on his prosecution, the merits of his defense. In effect, and as construed, he can make no defense, and at the time of the filing of his petition the registrant here either had to go to camp or to the penitentiary, regardless of whether the board's refusal to classify him as a minister was arbitrary or not.

In accepting the only alternative other than going to prison, a registrant submits to the final order subjecting himself to the custody and control of the military authorities, possibly thousands of miles from his home and witnesses, the personal attendance of whom he may not have, and without the privilege of facing and personally cross-examining witnesses against him. Therefore, it is most improbable, if not impossible, for a registrant, who is unable to secure the attendance of witnesses on a habeas corpus proceeding near his place of confinement to testify on the question of his sincerity and whether he is in good faith an ordained minister, or a regular minister, to have a full and fair hearing. Such, in the opinion of this Court, is not a day in Court, and will, under such circumstances, deprive the petitioner of the privilege of properly, fairly and fully presenting evidence for whatever it may be worth to sustain his claim that he has been improperly, or arbitrarily, classified. As a practical matter, in fact, and in effect the very nature of such a hearing does not measure up to a day in Court, as this Court understands what a day in Court means.

If, in a criminal prosecution under an indictment, one cannot offer his defense, and if, under the alternative situation, the filing of a writ of habeas corpus as outlined above, one is handicapped in fairly and fully presenting his cause, it is impossible for one, as in this case, to enjoy his legal rights as a citizen of America, and his liberty is restrained through the control and custody of the Board.

This Court is not unmindful of the patriotic zeal of the American people, and their representatives in the Legislative Branch of the Government, to avoid delay and confusion in raising an Army for the defense of the Flag. Yet, with our 135 millions of people, the fact that an infinitesimal number of men, physically and mentally able to bear arms, have failed to respond to their country's call, is indicative that very little confusion and interference with raising an Army, and no congestion in court procedure, could be expected by adhering to the bedrock principles and the great ideal of a guarantee of the right to a day in Court and a fair and impartial trial. The average American is glad of an opportunity to fight for his country and deems it a privilege, as well as his duty.

The ability of this great Government to wage a war without impairing the fundamental rights of its citizens, no one can question. While expediency must be practiced, while everything must be done for

the welfare of the Republic, everything expedient can be done without an impairment of the citizens' rights. Expediency is not always the test in questions involving fundamentals under our form of government.

■ The question here, as stated, is solely one of jurisdiction. It is: Whether one who, after his classification, has received a final order of the Selective Service Board to report for duty on a certain day, is in such custody and control of the Board as amounts to such "restraint of liberty" as entitles him to a hearing on a petition for a writ of habeas corpus with a view of securing the judgment of a Court on the circumstances and reasons for his classification.

In the opinion of this Court "restraint of liberty," as used in Section 452, 28 U.S. C.A., relative to habeas corpus proceedings, is the foundation or real basis of habeas corpus proceedings. Assuming that one may be restrained of his liberty though not held in physical confinement, this Court cannot escape the conviction that if the petitioner must obey the final order of the Board or go to the penitentiary, his liberty is restrained as contemplated by the Congress when it amended the above Section of the United States Code in 1867.

This Court does not believe that a physical confinement of one detained as the petitioner here, is necessary to establish such custody, control and confinement as the Board contends is necessary to give the Court jurisdiction; nor is the presence of the petitioner in Court necessary. The question here is a detention, constructive custody, a control or constructive confinement by the Board, and the reasons therefor. The very heart of habeas corpus is not a strictly technical procedure as to form —the substance is the issue.

This Court issued an order to the Board to show cause why the writ should not issue. This procedure does not require the physical presence, or production of the petitioner by the Board. The answer by the Board was to the effect that the Board is not detaining the petitioner and has no authority to bring the petitioner into this Court. Repeating, the question of importance here is, why, or in what manner, the Board has classified the petitioner and is detaining him. True, the control of the prisoner results from an order, regular on its face as to form, and in compliance with

the regulations and processes of classification, as construed by the administrators of the Selective Service Act, yet whether the registrant's claim of exemption was considered without prejudice, is the real issue which every registrant should have, and does have the right to raise in Court.

■ It is contended that Congress did not specifically provide for a review by the Courts of the classification of a registrant in the Selective Training and Service Act. There are many laws in which Congress did not specify a Court review. Suppose Congress had provided that no Court review could be had, will any one deny the futility of such a provision? Certainly Congress did not say a day in Court could only be had after the registrant submits himself to the custody of the Army, and the Act does not provide there shall be no Court review after the final order of the Board, and before reporting to a camp for induction. Nor does it provide that upon the final order of the Board the petitioner has not exhausted all his administrative remedies. This Court cannot agree that one may not have his day in Court under a given statute because of the failure of Congress to specifically provide it. Such a right is fundamental, and the Legislative Branch of the Government need not provide it.

■ Since the people and their lawmakers have provided that religious faith is a ground for exemption from military service—whether such a policy is wise or unwise—the right to claim such an exemption in a court, if one believes he has been unjustly dealt with, must be maintained in keeping with our ideals of fair and just administration of our laws, which means a full and complete inquiry.

Assuming, in a criminal prosecution of a registrant, that he is sincere in his claim as being a minister; assuming further—which this Court in no wise does in the instant case—that the Board acted arbitrarily, or through prejudice, in refusing to consider new evidence showing that he is in good faith a minister; in such a case the Board, in effect, is the Court, and its final order to proceed to a camp for induction is the last word. Surely, in such an assumed case the defendant is denied his right to a full hearing and a fair and impartial trial.

With greatest respect for courts and administrative officers who are, with the finest integrity, giving their best efforts to

362

their duties in administering, or construing, the Act and the regulations thereunder, this Court is unable to bring itself in agreement that Congress intended, or that Congress has said, that a citizen of the United States must either accept the above situation or have his liberty further restrained by obeying the final order before he may seek relief in Court.

Believing that the term "detention" may define either an actual physical custody and confinement of a person, or a constructive custody of him, the cause of such a detention, on a writ of habeas corpus, may be inquired into by a Court. Believing that the detention here is, or amounts to, that restraint of liberty contemplated by the lawmakers, this Court, with due reference to the views of others, holds that it has jurisdiction to hear the petition.