UNITED STATES ex rel. LAWRENCE v. COMMANDING OFFICER OF McCOOK ARMY AIR FIELD et al.

Civil Action No. 27.

District Court, D. Nebraska, McCook Division.

Feb. 15, 1945.

Franklin J. Kramer, of Elgin, Ill., and Frederick L. Wolff, of Omaha, Neb., for complainant.

Emmet L. Murphy, Asst. U. S. Atty., of Omaha, Neb., for respondents Colonel Bernard C. Castor, and Colonel John R. Kane, his successor as Commanding Officer of McCook Army Air Field.

DELEHANT, District Judge.

On December 7, 1944, this action was brought, upon the relation of James Dymond Lawrence, then and now a soldier of the United States Army with the grade of private, stationed at McCook army air field, within the area of this Division of the Court, to obtain a writ of habeas corpus for the purpose of testing the validity of his alleged detention in the army, and procuring his release therefrom. Lawrence will be referred to hereafter either as "the complainant" or as "the registrant." His demand for relief rests upon his contention that he was invalidly inducted into the army in pursuance of an arbitrary, capricious and unlawful classification, and his subsequent selection for military service by Local Selective Service Board No. 1, of Lake County, Illinois, with headquarters at Highland Park, Illinois, before which, as a resident of Lake County, Illinois, he was a registrant, and upon the arbitrary, capricious and unlawful affirmance of his classification by the appropriate Board of Appeal. The action of the several boards thus criticised in the amended complaint on which the case was tried, consisted of

the classification of the complainant in Class I-A, as available and eligible for training and service in the armed forces of the United States, instead of in Class II-C, as entitled to an agricultural deferment. No other claim to deferment, and no claim whatsoever to exemption, from military service and training was ever made by the complainant, or is now asserted or relied upon. It is the classification only that is assailed. No irregularity in selection, once a classification for service and training was made, is pointed out.

The writ was issued; and on January 25, 1945, as an adjourned return date prescribed upon the complainant's request, the designated respondent, and his successor in office, made answer and return to the writ and to the complainant's amended complaint filed by leave of court, and acknowledged their limited custody over the complainant as a member of the army, and denied the complainant's allegations of caprice and arbitrary action on the part of the selective service boards in his classification. Upon the making and filing of the answer and return, the court proceeded immediately with the trial of the issues. The complainant testified orally, and introduced in evidence sundry depositions theretofore taken in his behalf in Illinois. The respondents cross-examined the complainant, and, through counsel not appearing of record in this court, had also cross-examined the witnesses testifying by deposition. But, otherwise, no evidence was introduced by the respondents, who have tendered, both by a formal motion to dismiss and by resting without introducing evidence, the issue of the insufficiency of the evidence presented in the course of the complainant's case in chief to support the writ.

By agreement of the parties, the court continued the case to this date for decision, receiving and considering, meanwhile, briefs from counsel in support of their respective positions.

The constitutionality of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 301 et seq., both in its general design and purpose, and in its employment of local boards and regional boards of appeal as the instrumentality for its enforcement, has been conclusively affirmed. Selective Draft Law Cases, Arver v. United States, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A. 1918C, 361, Ann.Cas.1918B, 856; United States ex rel. Bergdoll v. Drum, 107 F.2d 897, 129 A.L.R. 1165, certiorari denied 310 U.S. 648, 60 S.Ct. 1098, 84 L.Ed. 1414; Falbo v. United States, 320 U.S. 549, 64 S. Ct. 346, 88 L.Ed. ——; Seele v. United States, 8 Cir., 133 F.2d 1015, 1019.

Nor does the complainant question the validity of the act, or the legality of the selective service system as such. What he challenges is the concrete action of his own local board and board of appeal in his individual classification, and their respective rulings upon his demand for an agricultural deferment. The consideration of this contention, and of the evidence by which the complainant has attempted to sustain it, may well be preceded by a brief recollection of the very limited office of the courts in the determination of cases of this character.

Under the statute, Title 50 U.S.C.A.Appendix, § 303(a), liability for training and service in the armed forces of the nation is imposed upon every male citizen of the United States within certain age limits, which include the complainant, subject to designated exceptions which, save for the agricultural deferment later noted, have no relation to the complainant. By Title 50 U.S.C.A.Appendix, § 310, the president is clothed with power to create and establish a selective service system, consisting of a local board (and in many instances more than one such local board) in each county, or corresponding political subdivision, and regional boards of appeal. And such local boards are charged with the primary and local administration of the system of classification and selection, and vested with power, within their respective jurisdictions, to hear and determine, subject to the right of appeal to the proper boards of appeal, "all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this Act of all individuals within the jurisdiction of such local boards." And it is explicitly provided that, "the decisions of such local boards shall be final except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe." Like finality, subject only to the possibility of an appeal to the president (upon which no issue arises or under the statutes and regulations and the history of the complainant's classification could arise in this case), is accorded to the decision of an appeal board upon an appeal from a local board.

The decisions of local and appeal boards within the system are administrative acts. They are not judicial decisions subject to appellate review by the courts. No jurisdiction is conferred, under the act or otherwise, upon the courts of the United States to review the findings and orders of either the local boards or the boards of appeal. Bronemann v. United States, 8 Cir., 138 F.2d 333; United States ex rel. LaCharity v. Commanding Officer, 2 Cir., 142 F.2d 381, 382, affirming In re LaCharity, D.C., 53 F.Supp. 47; United States v. Grieme, 3 Cir., 128 F.2d 811; Drumheller v. Berks County Local Board No. 1, 3 Cir., 130 F.2d 610, 611, affirming D.C., 43 F. Supp. 881; Baxley v. United States, 4 Cir., 134 F.2d 998, 999; Goff v. United States, 4 Cir., 135 F.2d 610, 612; Fletcher v. United States, 5 Cir., 129 F.2d 262, 263; Lehr v. United States, 5 Cir., 139 F.2d 919; Biron v. Collins, 5 Cir., 145 F.2d 758, reversing D.C., 56 F.Supp. 357; United States v. Mroz, 7 Cir., 136 F.2d 221; Dick v. Tevlin, D.C.N.Y., 37 F.Supp. 836, 838; Petition of Soberman, D.C.N.Y., 37 F. Supp. 522; United States ex rel. Errichetti v. Baird, D.C.N.Y., 39 F.Supp. 388, 390, 391; United States ex rel. Broker v. Baird, D.C.N.Y., 39 F.Supp. 392, 394; United States ex rel. Pasciuto v. Baird, D.C.N.Y., 39 F.Supp. 411; Shimola v. Local Board, D.C.Ohio, 40 F.Supp. 808, 809; United States v. DiLorenzo, D.C.Del., 45 F.Supp. 590; United States ex rel. Beers v. Selective Training & Service Local Board, D.C. Wis., 50 F.Supp. 39, 40; United States ex rel. Mauro v. Downer, D.C.N.Y., 50 F. Supp. 412, 413. In a similar situation, under the comparable Selective Draft Act of 1917, 50 U.S.C.A.Appendix, § 201 et seq., judicial review of classifications was not allowed. Franke v. Murray, 8 Cir., 248 F. 865, 868, L.R.A.1918E, 1015.

Not only is no general right of judicial review, by appeal or certiorari provided, but, for the strict purpose of review of the actions of selective service boards, resort may not be had to the courts through quest of the Writ of Habeas Corpus. United States v. Grieme, 3 Cir., 128 F.2d 811, 814; United States ex rel. Troiani v. Heyburn, D.C.Pa., 245 F. 360; United States v. Walden, D.C.Ga., 56 F.Supp. 777; Biron v. Collins, 5 Cir., 145 F.2d 758, reversing D.C., 56 F.Supp. 357.

However, a registrant who, having been classified and selected for service and training, has exhausted the remedies allowed him under the act and has undergone induction into the military service, may, by appropriate Habeas Corpus proceedings, obtain a judicial determination of the legality of his induction in so far as he may assert that it is constitutionally invalid in consequence of action in his classification or selection by the selective service boards in an arbitrary or capricious manner or their denial to him of a full and fair hearing. Bronemann v. United States, 8 Cir., 138 F.2d 333, 337; United States v. Kauten, 2 Cir., 133 F.2d 703, 706, 707; United States ex rel. Phillips v. Downer, 2 Cir., 135 F.2d 521; United States ex rel. Beye v. Downer, 2 Cir., 143 F.2d 125, 126; United States v. Grieme, 3 Cir., 128 F.2d 811, 814; Drumheller v. Local Board No. 1, 3 Cir., 130 F.2d 610, 612, affirming D.C., 43 F.Supp. 881; Ex parte Stanziale, 3 Cir., 138 F.2d 312, reversing D.C., 49 F.Supp. 961; Goff v. United States, 4 Cir., 135 F.2d 610, 612; Dick v. Tevlin, D.C.N.Y., 37 F.Supp. 836, 838; United States ex rel. Filomio v. Powell, D.C.N.J., 38 F.Supp. 183, 186; United States ex rel. Errichetti v. Baird, D.C.N.Y., 39 F.Supp. 388, 389; United States ex rel. Pasciuto v. Baird, D.C.N.Y., 39 F.Supp. 411; Application of Greenberg, D.C.N.J., 39 F.Supp. 13; Bullard v. Selective Service Board, D.C.Okl., 50 F.Supp. 192; United States ex rel. Bayly v. Reckord, D.C.Md., 51 F.Supp. 507; Hauck v. Hoyl, D.C.Cal., 51 F.Supp. 1005.

In the instant case it is manifest, and unquestioned, that the complainant seasonably exhausted the remedies accorded to him under the Selective Training and Service Act of 1940, as amended; that he appealed from his classification by the local board to the board of appeal, from which he received an adverse ruling of affirmance; and that thereafter, upon being selected for service and training by the local board and notified to appear for induction, he did appear and was duly inducted. His right to a hearing upon his complaint is, therefore, clear, and is acknowledged.

Nor is serious question made as to the incidence of the burden of proof upon the tendered issue. In the ordinary proceeding for a writ of habeas corpus, the burden of establishing the facts supporting the writ rests upon the petitioner. Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830. Here, too, the court must recognize the elemental obligation for military service of every male person within the scope of the Act, and the fact that

no one is exempt or entitled to deferment from such service and training therefor, save by grace of the government granted within the framework of the Act and its implementing regulations. Local Draft Board No. 1 v. Connors, 9 Cir., 124 F.2d 388, 390. Hence, it has correctly been held that the burden of proof in support of the writ in a case of this nature is upon the complainant throughout the course of the case he prosecutes. United States v. Graham, D.C.Ark., 57 F.Supp. 938, 942.

■■ In the consideration of the issue before it, the court must apply the familiar rule that a general, though rebuttable, presumption of regularity in procedure and of the presence of substantial supporting evidence is to be accorded to the classifications and selections of local boards, Graf v. Mallon, 8 Cir., 138 F.2d 230, 235, in like manner as to the findings of other governmental administrative agencies. Their rulings are not to be disturbed, except upon persuasive evidence negativing the effect of that presumption.

■ The proper inquiry of this court is confined within narrow limits. The authorities already cited negativing the right to a general judicial review of a registrant's selective service classification make it clear that the court has no jurisdiction to try de novo the issue of the complainant's proper classification. At this point, it may be observed that, over objection by the respondents, the court, upon the trial, received in evidence the depositions of certain neighbors, friends, and employees in civilian life of the complainant in which evidence, quite apart from his record before the selective service boards, was tendered by the complainant, for the purpose of identifying him, prior to his military service, as a farmer. Oral evidence to the same effect was given upon the trial by the complainant over timely objection. Those rulings of the court were manifestly indulgent towards the complainant; but it should be made clear that the court has not considered, and does not now consider, the evidence in question as independent and substantive proof, by whose weight, either alone or together with showings to the same effect before the boards, the court may form and act upon an independent conclusion upon the merits of the complainant's claim to deferment. It was received primarily against the possibility that the respondents in the course of the trial might have contended that, despite any infirmities in the process of his classification, the complainant was never a farmer and therefore was uninjured by the irregularities.

■ Nor, in its examination into the history of the complainant's classification, may the court, by way of review, substitute its own judgment upon the merits of his claim for deferment for that arrived at by the local board and the board of appeal. Even if the court were of the opinion that upon the record before them, the boards were in error in their common conclusion, that fact alone would not warrant the complainant's present release. What the court may do, and what alone it has done, is to examine the course of the complainant's classification as the record shows it for the purpose of determining whether the complainant has sustained the burden of proving that the action of the local board in his classification was capricious or arbitrary, and whether he has made like proof of caprice or arbitrariness in the affirmance of his classification by the board of appeal.

In determining that issue the courts have proposed certain standards in which a measure of variety in expression, and probably though less obviously in substance, may be discerned. See discussion in United States ex rel. Trainin v. Cain, 2 Cir., 144 F.2d 944, 947, certiorari denied 65 S. Ct. 439.

■ In general, it is required that the classifying board proceed fairly; that it receive such supporting data as a registrant may submit to it, and accord him a hearing before the board if he request it; that it consider all the evidence presented to it; and that its classification be not repugnant to or in disregard of the applicable statute or regulations. Ex parte Stanziale, 3 Cir., 138 F.2d 312, 313, 314, 315, certiorari denied Stanziale v. Paullin, 320 U.S. 797, 64 S.Ct. 267.

Other courts declare that the ruling of the classifying board is to be sustained if in making it the board had before it for consideration any evidence supporting its conclusion. Ex parte Stanziale, 3 Cir., 138 F.2d 312, 315, certiorari denied Stanziale v. Paullin, 320 U.S. 797, 64 S.Ct. 267; United States ex rel. Brandon v. Downer, 2 Cir., 139 F.2d 761, 765; United States ex rel. Trainin v. Cain, 2 Cir., 144 F.2d 944, 947, certiorari denied 65 S.Ct. 439; Checinski v. United States, 6 Cir., 129 F.2d 461, 462.

Perhaps the greater number of courts, including the Circuit Court of Appeals for the Eighth Circuit, measure the essential validity of a registrant's consideration and classification by the classifying board under the test of the presence before the board of substantial evidence supporting its classification. Johnson v. United States, 8 Cir., 126 F.2d 242, 247; Seele v. United States, 8 Cir., 133 F.2d 1015, 1021; Graf v. Mallon, 8 Cir., 138 F.2d 230, 234; Arbitman v. Woodside, 4 Cir., 258 F. 441; Rase v. United States, 6 Cir., 129 F. 2d 204, 207; United States v. Mroz, 7 Cir., 136 F.2d 221; Ex parte Stewart, D.C.Cal., 47 F.Supp. 415, 418; Goodwin v. Rowe, D. C.W.Va., 49 F.Supp. 703, 704; Smith v. Richart, D.C.S.C., 53 F.Supp. 582; United States v. Flint, D.C.Conn., 54 F.Supp. 889, affirmed 142 F.2d 62; Ex parte Yost, D.C.Cal., 55 F.Supp. 768, 772; United States v. Graham, D.C.Ark., 57 F.Supp. 938.

It seems to be in order, therefore, that the relevant evidence be considered briefly with a view to determining, first whether the complainant has negatived by adequate proof the full consideration by the classifying and appeal boards of the evidence in his case before them, and secondly, how far the classification was supported by evidence before the local and appeal boards.

It may be observed that the record is void of any evidence at all as to what occurred before the board of appeal, except for the formal showing that the complainant seasonably appealed to that board, and his classification was by it unanimously affirmed. Neither in the testimony nor in the complainant's brief is there any evidence or specification of infirmity in the appeal board's action, with this exception, that the complainant argues in his brief (though he did not explicitly aver in any pleading) that the local board contrived to intercept an unbiased review of the complainant's classification by the board of appeal, a contention which will later be given consideration.

Briefly, this is the bare sequence of events in the proceeding relating to the complainant before his local board. He registered early in 1942. His selective service questionnaire was mailed to him on August 11, 1942, and was returned by him on August 29, 1942. In it he disclosed that he was twenty-one years old, divorced, and without dependents, and claimed a deferred classification upon the sole ground that he was a farmer, and was also actively engaged in custom work with machinery for other farmers, supporting his claim by detailed statements of fact. On October 10, 1942, he was placed in Class II-A by action of the board. On March 10, 1943, he was placed in Class II-C, and was so notified on March 11, 1943. A witness in the depositions mistakenly asserted that the classification in Class II-C occurred March 10, 1942. That he was in error is manifest. The registrant's questionnaire was not filed until August 29, 1942. And Class II-C was not created until November 18, 1942. (See Selective Service Regulations, Section 622.25 implementing the Tydings Amendment which was approved November 13, 1942, 56 Stat. 1018.) From time to time, at intervals of approximately six months he filed occupational questionnaires in support of his claim to continued agricultural deferment. Question of his further classification having arisen, he was called before the board, or some of its members, on September 8, 1943, and interrogated touching his farming operations and other employment. He appeared again before the board on September 15, 1943, and then, in addition to his own statements, supported his claim by filing at least seventeen (and as he contends in his briefs nineteen) affidavits of persons who stated therein that they knew him and his activities and generally identified him as an actual farmer. During one of these two conferences the board with three of its members was in formal session. The complainant insists that this was on September 8, 1943, and that on September 15, 1943, he saw very briefly and informally, only two of the members. Upon the weight of the evidence, the court inclines to the opinion that on September 15, 1943, he was formally before the board for conference, although the court does not regard the factual disparity in the testimony on this point as controlling. On September 15, 1943, by a recorded vote of three of the members of the board it was decided that he should be placed in Class I-A, thus being made subject to selection for training and service; but from testimony of members of the board, it appears, and the court finds, that at the complainant's request, formal entry on his questionnaire of such reclassification was deferred to allow him to complete some pending farm work. The formal entry on the questionnaire of the reclassification, initialled by the same three board members who on September 15, 1943,

had concurred in it, was made on October 6, 1943, and the giving to the complainant of written notice thereof, initiating his time for appeal was deferred until October 22, 1943. On November 3, 1943, he signed a notice of appeal on his questionnaire, that was accepted by the board, which sent the complete file to the board of appeal on November 8, 1943. That board affirmed the classification on November 16, 1943; and on November 20, 1943, the local board endorsed on the questionnaire minutes noting the affirmance, and the continuance of the registrant in Class I–A, and notified him in writing of the action. On December 6, 1943, the complainant was inducted into service; whereupon he was, on December 11, 1943, listed by the local board in Class I–C, as an inducted registrant.

Until, and as of, September 15, 1943, when the initial vote was taken for the reclassification of the complainant in Class I–A, the material in the way of evidence before the local board included his general questionnaire; his several successive occupational questionnaires; his unrecorded personal interview on September 8, 1943, with either the board in formal session or one or more of its members; his personal interview of September 15, 1943, and the supporting affidavits filed by the complainant on September 15, 1943. As already observed, while the vote to reclassify was taken on that date, it was not made formally effective by entry on the questionnaire until October 6, 1943, when the same three concurring members again acted by signing their initials to the endorsed entry; and the notice of reclassification was not sent until October 22, 1943. Meanwhile, members of the board had made private inquiry as to the real agricultural status of the registrant, one member had visited and observed his farm, and the board had requested and procured an investigation upon him and his activities by the United States Department of Agriculture War Board for Lake County, Illinois. The informal report of the latter investigation, signed by a Mr. Smith, was sent to the board before September 30, 1943, and in a letter dated October 2, 1943, on official stationery signed by Eb. Harris, member of the War Board, the report was formally filed on October 4, 1943. The supplemental inquiry and observation had not been favorable to the registrant's deferment.

Without exception and without successful dispute the four members of the local board who testified in depositions, including the three acting on the classification, testified that all of the foregoing material was maturely and carefully considered in the process of the registrant's classification; and that even after his classification had been completed the board continued to give consideration to the substantial amount of material which the registrant then introduced into his file in opposition to his classification. Nothing before the court convincingly controverts that consideration.

 The complainant directs attention to the fact that no member of the board was a farmer, thus questioning the competency of the board to pass understandingly upon an issue of agricultural deferment, and perhaps its impartiality in such action. He magnifies the remoteness from the soil of the board members. It is true that none of them was an actual farmer. But some of them were reared on farms and had had farming experience and contacts. Besides, they seem to the court to have been fully competent in the premises and to have devoted careful consideration to the problem before them. However, the personnel of the board is strictly an administrative responsibility, over which the courts have and should assume no concern. In the absence of any evidence either directly or indirectly pointing to the actual hostility of the members of the local board to the agricultural deferment in general, or to a misunderstanding of, or hostility to, the complainant's claim, resting in their several occupations, the court can perceive no materiality or relevancy to the pending issue, in those occupations. The court, therefore, forbears to discuss further a detail which is beyond the realm of judicial business. It does observe in passing that the local board members were residents of Lake County, though most, but not all, of them worked in Chicago, which is in Cook County, Illinois.

 Convinced that the local board considered the evidence before it, the court proceeds to determine whether its order was sustained by adequate evidence. And since the Eighth Circuit Court, though without any strictly judicial determination of its imperative necessity in a case squarely presenting that issue, has quite generally adhered to the rule requiring substantial

evidence in support of selective service classifications (vide supra), this court will follow that rule; although let it be understood as not declaring that it constitutes the strictly imperative test. No ruling is made or required upon that point.

That there was ample evidence upon which the local board might, in its discretion, have accorded the complainant an agricultural deferment is not, and can not rationally be, questioned. That question, therefore, will not be discussed. The court's inquiry is whether there was substantial evidence in support of the local board's denial of such deferment; and the court is persuaded that that query must be answered affirmatively.

■ The boards in this instance have not acted in disregard of any applicable law or regulation. Engagement in the occupation of farming alone is not, under the selective service act, a ground sufficient to entitle a registrant to a deferred status. By Title 50 U.S.C.A.Appendix, § 305(k), in force at the time of the classification under scrutiny, it is provided that: "Every registrant found by a selective service local board, subject to appeal in accordance with section 10(a)(2), to be necessary to and regularly engaged in an agricultural occupation or endeavor essential to the war effort, shall be deferred from training and service in the land and naval forces so long as he remains so engaged and until such time as a satisfactory replacement can be obtained."

■ That is the material language of the so-called Tydings Amendment. Parenthetically, it is mentioned that no selective service regulation, with the force of law, more favorable to the complainant than the language just quoted from the statute has been drawn to the court's attention or discovered in the court's own research. Thus, it is apparent that, to warrant such a deferment, the local board (not some other agency or tribunal) must find, first, that the particular agricultural occupation or endeavor on which the registrant relies is essential to the war effort; secondly, that he is regularly engaged in it; and, thirdly, that he is necessary to it. Unless these facts be found, the board need never reach the question of the availability of replacement. The right of appeal need not be considered at this point, for an appeal was prosecuted by the complainant.

■ An applicable and effective Selective Service Regulation (Section 662.24; Code of Federal Regulations Cumulative Supplement, Book 6, page 9158) thus defines a "necessary man": "A registrant shall be considered a 'necessary man' in industry, business, employment, agricultural pursuit, governmental service, or in any other service or endeavor, including training or preparation therefor, only when all of these conditions exist: (1) He is, or but for a seasonal or temporary interruption, would be, engaged in such activity; (2) he cannot be replaced because of a shortage of persons with his qualifications or skill in such activity; and (3) his removal would cause a serious loss of effectiveness in such activity." It will be observed that the predication of "necessity" in respect of a registrant is to be made sparingly and only upon the concurrence of the identified conditions whose factual affirmance necessarily rests with the local board.

The local board did not find the three requisites for deferment specified in the statute, and all three tests of necessity prescribed in the regulation to exist; and from the evidence, it appears that it rested its judgment both upon the farm and upon the farmer. Several items that were before it afford substantial evidence to support its ruling.

As to the farm operation itself, the registrant's ownership extended to only eighty acres of the land which he claimed to operate. He made a showing that he had a fractional interest in some other land but it is not clear that it was ever under his tillage. He had been engaged in farming his own eighty acre tract since 1940; and also since 1941, one-hundred eighty acres of leased land, the entire operation apparently being upon some four distinct tracts. The land appears from the evidence to have been marshy and subject in substantial measure to water damage. Admittedly, it was not agricultural land of prime grade, though the registrant made a showing that he was improving its productivity. His eighty acre tract was improved in some measure, though precisely how is left uncertain from the evidence. He testified that his parents came out from town and lived on it in the summer, during which he lived with them, and that he "batched" there during other seasons. Thus, the board might well have concluded either

that the operation of the land involved was not essential to the war effort, or more probably that since it consisted of several detached units they could easily be operated by other neighboring farmers and, whether separated or consolidated, did not constitute a farm essential to the war effort. However, it is probable from the record that the classification was based chiefly upon the registrant himself and his relation to his agricultural pursuit.

In the first place, when he was classified in Class I-A he was not wholly engaged in farming. At all material times he had operated largely in doing for hire power farm work on other farmers' lands. Then, in the spring of 1943 he had become the local agent for the sale of the Allis-Chalmers line of farm implements and repairs. He had not been engaged in the latter pursuit when he registered with the local board or when he was given his original deferred classification. In his testimony upon the trial, the complainant sought to minimize the time and attention exacted by that business venture and to show that it was largely carried on by a hired mechanic, with his own assistance after farming hours, though before his local board, and even in his amended complaint in this case, he emphasized his participation in the implement business as being in itself a distinct contribution to the war effort. The local board may very properly have concluded that a man who, in the face of his claim of farming two hundred sixty acres of land, would spend a considerable amount of time in commercialized power farming, and also enter into the separate business of an implement dealer, was not wholly devoted personally to the enterprise of farming. In fact, testimony supporting that view, though never before the board, appears in the deposition offered by the complainant himself, of the farmer father of the complainant's predecessor in the implement business. He testified that his son spent too much time in the business, to the neglect of his farming operations.

The local board obviously considered in some measure an admission by the complainant in one of the September, 1943, conferences that he was accustomed to driving his automobile three thousand miles each month, for in a memorandum made by one of the board members and attested by two of them on September 15, 1943, relating to the conference with the registrant under that date appears the language, "he admitted driving his automobile three thousand miles per month which could leave very little time for farming." In his testimony in this case, the complainant questioned the factual accuracy of the memorandum. But, unfortunately for his position, he testified that he bought the automobile early in August, 1942, with a speedometer mileage reading of fifteen hundred; that the speedometer ceased to operate late in November, 1943, some three and one-half months after the purchase of the car, with a reading then of seventeen thousand miles and was not restored to operation; and that he continued driving the car "right along thereafter." Now, that testimony showed an average monthly mileage during the first three and one-half months of his ownership of the car, of nearly four thousand, instead of three thousand; and let it be noted that those definite figures are for a period late in 1942, before the complainant acquired the implement agency in the spring of 1943. The court may reasonably, and does, conclude that the board members' notation fairly reflects the registrant's statement to the board and that the statement, tested by his earlier measured mileage was probably more favorable than the actual fact in its maker's behalf. The complainant testified before the court that others than himself had access to, and used the car, though whether he so advised the board does not appear. It does, however, fairly appear from the depositions of board members as well as from the complainant's testimony that his statement to the board members more accurately referred to the mileage on his automobile than to his own driving of it. But, in the absence of real clarification by him to the board, it might reasonably have attributed the use almost exclusively to him. Indeed, even yet, he is vague in his specification of the extent to which others used the machine. On the whole and as the statement of the registrant to the board stood, the operation of his automobile could properly have been at least one cricumstance persuading the local board that the registrant was not sufficiently devoted to his farming work to make him indispensable to it.

The testimony discloses that from independent inquiries, and partly from examination by at least one of its members, the board, prior to the reclassification of October 6, 1943, had become satisfied that the farming results on the land operated

by the registrant were not of a husbandlike sort. The propriety of such inquiry and examination may not be successfully assailed. While a local board is not obligated to make a complete investigation of a registrant's status by searching for evidence, calling witnesses, and conducting a judicial trial, in a strict or formal sense, Lehr v. United States, 5 Cir., 139 F.2d 919, Rase v. United States, 6 Cir., 129 F.2d 204, 210, it may make a personal investigation into the facts or obtain an independent investigation from a welfare or service agency, United States v. Kowal, D.C.Del., 45 F.Supp. 301, 302; United States v. Graham, D.C.Ark., 57 F.Supp. 938, 942; United States ex rel. Isseroff v. Cain, D.C. N.Y., 57 F.Supp. 715. And it quite clearly appears that as early as September 15, 1943, and probably on September 8, 1943, the registrant was apprised of, and interrogated by the board about, this element.

Then there are the complainant's own history and personality which were clearly before the local board. The members of the board had questioned, observed, and appraised the young man himself; and they had before them his questionnaire and showings, from which several elements to his disadvantage clearly appear.

A discernible measure of personal instability is disclosed in that file. Despite his youth, after a single season with an eighty acre tract, he had started to farm on a scale more appropriate to a mature and experienced farmer. He had secured a disproportionately large quantity of power machinery, and had employed it in doing machine farming work for hire on the farms of others, almost an enterprise in itself. Then, by 1943 his activities transcended both his farming and his commercial farm work and extended into the operation of a farm machinery agency, a separate and very exacting business. Finally, on the eve of his reclassification he proposed to lease and operate an additional four hundred acres of farm land, which, with the two hundred sixty acres already under his management, would have made six hundred sixty acres. The local board may well have felt that on the whole showing, the registrant, then barely twenty-three years of age, appraised too optimistically and quite inaccurately his capacity for service in the very jealous and confining enterprise of agriculture.

The local board also appears to have regarded the registrant's statements touching the live stock on his farm as something less than consistent and frank, for, though on occupational questionnaires, he had scheduled certain cattle as being on the farm, he admitted in one of the September, 1943, conferences, upon inquiry prompted by information informally gotten by board members, that he did not own those cattle, but they belonged to an employee or tenant. Similarly, in 1942 he had quite evidently overestimated his anticipation of the production of cattle on his farm for that year. Without concluding that his written statements were false, either objectively or subjectively, the court readily understands how the local board would be impressed by an apparent lack of candor in his reliance on another's cattle as an element arguing for his deferment solely because they were kept for the time being on his farm.

Upon the whole record thus summarily examined, the court is abundantly satisfied that the local board was in possession of substantial evidence in support of its classification and selection of the registrant. And since that is the measure most favorable to the complainant by which the essential constitutional validity of his classification is to be determined, his recourse to this court must fail.

The court has not overlooked, or failed to consider certain specific particulars wherein the complainant contends that his local board dealt arbitrarily, capriciously, or unfairly with him.

The complainant cites in his support, in addition to a general statement of his constitutional right to due process of which there is no question, only two reported cases. Neither of them involves an inquiry into the factual basis of a local board's classification. Both are premised upon the failure of local boards to pursue specific steps made mandatory by Selective Service Regulations. In United States ex rel. Bayly v. Reckord, D.C.Md., 51 F.Supp. 507, supra, a local board's action in selecting already validly classified registrants for service and training in an order of priority forbidden by a regulation and directive was held invalid. In United States ex rel. Beye v. Downer, 2 Cir., 143 F.2d 125, with one judge dissenting, the Circuit Court held invalid an induction based upon an original classification in the face of a mandatory regulation requiring reclassification in Class IV–F upon a registrant's rejection

under a physical examination. The constitutional fault there involved was the denial of the IV–F classification, to alter which the board would have had still further to reclassify the registrant in Class I–A, whereupon he would have had an absolute right to appeal to the board of appeal. The cited cases are not in point; and this quite irrespective of the reliance of United States ex rel. Bayly v. Reckord upon Ex Parte Stanziale, D.C.N.J., 49 F.Supp. 961, which was later directly reversed. Vide supra 3 Cir., 138 F.2d 312. The complainant's detailed factual arguments, rather than his legal citations, require consideration. They will now be mentioned briefly.

 Near the end of his oral testimony before the court, the complainant stated that both on September 15, 1943, and again when he filed his request for an appeal, he asked to see his file before the local board and was refused permission to examine it. The statement, appraised in its surrounding circumstances, is quite incredible and cannot be and is not accepted as true by the court. Neither in his complaint, nor in his amended complaint, the latter of which was prepared with meticulous thoroughness, and specified the particulars on which he predicated his charge of arbitrariness and caprice, did he mention such a request and refusal. He was present when his counsel examined the board members in detail during the taking of their depositions and not one of them was interrogated on that point. Nor, upon cross-examination could he recall whether, until just prior to offering such testimony, he had ever discussed with his counsel the asserted refusal of the permission to examine the file. Finally, in part, at least, his statement is controverted by the physical facts, for his demand for appeal was endorsed by him personally in writing on the back of his questionnaire which itself was a part of his selective service file. Neither did the witness, as to either of the requests, say to whom he made it or by whom it was denied, or narrate the language in which and the circumstances under which he made the request. If it be argued that the alleged request of September 15, 1943 was made to the board members who then interviewed the complainant, it may be noted that such an inference is not necessary from the language of the witness. Besides, though such a refusal might in some cases be an important matter, it does not appear that in this instance

it could have amounted to more than discourtesy. At the time of the interview of September 15, 1943, immediately after which the first vote for his reclassification was taken, there was nothing of material significance in the file except those items which the registrant had personally placed there. The memorandum of the conversation of that date was made during or immediately after the conference. And that memorandum and the local Department of Agriculture War Board's report were the only matters of any significance unfavorable to the registrant's claim for deferment, that had been placed in the file thereafter and before the date on which the registrant appealed and the time when his file was sent to the board of appeal.

 The complainant insisted in his oral testimony that in his principal conference before the board, he was hurried by its members, and not allowed full time to make adequate explanations in answer to one question before another question was asked. The court must acknowledge some sympathy with an uncompensated local board in its task of considering and classifying thousands of registrants. But it would seem from the whole record that the complainant disclosed his position to, and was understood by, the board. Besides, the complainant, though a highly intelligent young man, is very slow, and unreasonably deliberate in his answers to questions as the court readily observed upon the trial. In his interrogation a clear insistence on brevity and punctuality, though probably irritating to him, would manifestly not be unreasonable. But, if the complainant really felt that he had been prevented by his local board's impatience or abruptness from making before it a full disclosure of his position, he could and should have drawn that fact clearly to the attention of the board of appeal with a request for a more orderly hearing. Having failed to take that step he can hardly expect now to prevail upon this obscure point. Or, he may consider that his language to the following effect: "Nor has he been given a chance to fully explain anything to the board or show them his farms or crops. Local board has taken its own ideas as statements of fact," contained in his own affidavit of November 6, 1943, which accompanied his file to the appeal board sufficiently raised the question. If that be true, the appeal board did not consider the point to be well taken.

██ The action of the local board is criticised on the score of its alleged failure to follow certain instructions of the selective service agencies dealing with unit standards for the determination of the war time merit of a farm enterprise in the administration of the selective service system. The complainant loosely but incorrectly characterizes the instructions as a regulation. Although there is no adequate evidence in the record of the issuance and applicable date of any such instruction, it is sufficient to observe that instructions of that nature as distinguished from standing selective service regulations are advisory only, and do not have the force of law. Ex parte Stewart, D.C.Cal., 47 F. Supp. 415; Goodwin v. Rowe, D.C.W.Va., 49 F.Supp. 703. But in this instance the court has examined in detail a copy of the instruction relied upon (being Selective Service Local Board Release Number 175), both to the extent that purported portions of it were read into the depositions and are quoted in the briefs of the complainant and also in a pamphlet manuscript of the release. It contains within itself abundant warning that it is merely an advisory and suggestive instrument, not of uniform or inflexible applicability territorially or as between all registrants and their several farms. What is said in this connection sufficiently answers also the argument based on the admitted fact that the local board did not seek the service of a local employment agency of the War Man Power Commission in realigning the complainant's operations. The comment of the release upon that point is merely suggestive. Besides, it seems not to have been designed for men in the complainant's position.

██ The complainant testified that at the close of his conversation with members of the local board on September 15, 1943 two members of the board said to him that if he did not hear from them by October 1, he might consider that he would be farming for another year. This was denied by at least one board member; it is negatived by the fact that on that very occasion the initial vote for his reclassification in Class I-A was taken. And, on the whole record, the court finds against the complainant upon the factual question whether the statement was made. It need hardly be added that such a statement informally made could neither intercept nor override the regular, formal and official action of the board in making a reclassification of which due notice, with right of appeal was given.

██ It is argued that the complainant's classification is void because the same board has given to one of his youthful hired farm hands an agricultural deferment. The circumstances in which the latter classification was made and later adhered to are not shown. Nor can the other classification avail the complainant for his present purpose. Each registrant before a local board must be classified upon the basis of his own background. That indulgence may have been accorded to one such registrant can not vitiate the classification of another, so long as the latter action is within the proper limits of justice. The most respectable authority supporting this rule antedates by many generations the modern system of case reporting. Matthew, XX, 1–14.

██ In the Department of Agriculture War Board's report to the local board certain comments were made, particularly insinuating that the registrant was "simply a slacker" and touching an asserted evasion of military service by the complainant's father in 1917–1918, which were inappropriate for any possible consideration by the local board. But it was affirmatively stated in the depositions by at least one board member that these statements were not considered by the board. The improbability that consideration was given by the board to the slur upon the registrant's father is fortified by the fact that statements then before the board disclosed the age of the registrant's father to be such that he was thirty-five or thirty-six years of age in 1917–1918. And, though during the crisis of those years, older men did register for service, actual general selection by draft stopped at age 31. Similarly, it will not be assumed that any such material received consideration by the appellate board.

██ The reclassification of the complainant from a deferred group to Class I-A itself is urged as intrinsically arbitrary and capricious; for it is insisted that no unfavorable change had meanwhile intervened in his occupation. But his entry into the implement field had intervened, as had also an examination by the local board into his actual operations. And it is notorious that the nation's military necessities had increased, with a consequent narrowing of the possibility of deferment for any cause. In identical circumstances, a man

entitled to an earlier deferment might, by the Autumn of 1943, have been subject to classification in Class I–A.

■ Nor is there merit in a charge by the complainant's counsel that only one member of the local board really reclassified the complainant. It is, indeed, shown that in passing upon agricultural deferment claims, the member, Huhn, took a leading part and carried a large measure of responsibility. But clearly analyzed, what actually occurred was a reasonable departmentalization of the board's heavy case load, whereunder certain members did most of the preliminary study on certain types of cases. For it clearly appears that in each case, as in this instance, at least three members of the local board considered the file and its issues and acted and voted upon them. No more is required.

■ Counsel for the complainant misconstrue the consequence upon his reclassification of the inaccuracies in his occupational questionnaires touching cattle. At most, in their want of candor they were one among a number of other considerations which, in combination, persuaded the local board to deny further deferment. Their mention does not warrant the inference that the local board, on their account and for their punishment, condemned him to involuntary servitude in the army. And with that comment, the court will forbear further analysis of the attempted imputation of tyrannical oppression to the local board.

■■ An ingenious argument is made (vide supra) that the local board, in practical operation deprived the registrant of his right of appeal. The specification of this assertion seems to be that the appeal was unfairly presented in that the local board (a) did not insert in the registrant's file an "anonymous letter," and (b) did insert therein its own memorandum touching its conference with the registrant on September 15, 1943, and the letter of Eb. Harris filed with it October 4, 1943. The "anonymous letter" does not deserve that epithet; for it was neither unsolicited nor unsigned, and was, really, an informal report, not on the Agricultural War Board's stationery of its investigation made on oral request by the local board for an investigation and report upon the registrant's claim, which, at the further request under date of September 30, 1943 of the local board, was replaced by a formal letter dated October 2,

1943, on the War Board's stationery signed by Harris as one of its members. So, the exclusion from the local board's records of the less official report of the War Board's inquiry seems to have been appropriate. Nor is it explained—nor could it be—how its presence in the file could have assisted the complainant. And touching the inclusion with the file on its transmittal to the board of appeal of the local board's memorandum and the Harris letter, it may simply be said that they belonged there. They were then a part of the record, just as the many affidavits filed by the complainant which also went to the board of appeal. And the evidence does not persuade the court that the registrant was prevented from knowing of their presence, when he formally entered upon the questionnaire in his file his notice of appeal. It is of some significance in this general connection that between his entry of notice of appeal, and the local board's transmittal of his file to the appeal board, the registrant inserted into the file obviously for consideration by the appeal board, a letter from Production Credit Association touching his farm borrowing, and a long affidavit by himself, both supporting his claim to deferment.

■ In some particulars, the briefs of the complainant place substantial emphasis upon loose and inaccurate answers to isolated questions in the depositions. One, among the several of these instances, is question 4, page 93. The court appraises the effect of any answer by its proper context; and thus declines to attribute to a manifestly inept and inadvertent answer a significance that is conclusively negatived by its entire setting.

■■ A situation that is readily perceptible in this case is the unpardonable tardiness of its institution. The complainant was inducted into the military service on December 6, 1943. Judicially noting the currently well recognized usage of the United States army, he undoubtedly received his preliminary processing and assignment, and basic training, and was assigned to general military duty, received army pay, and subsistence, and as he himself testified had "everything a soldier gets", until he filed this suit exactly one year and one day after his induction. While there is authority warranting the consideration of a petitioner's unreasonable delay in seeking relief of the character here demanded, Ex parte Blazekovic, D.C.Mich., 248 F. 327, 341, this court has

not allowed that factor to enter into its decision. But it may not be inappropriate to suggest that delay to the extent which has occurred here might well be considered in a doubtful case as a circumstance tending to negative an inference of caprice or arbitrariness or unfairness in classification and selection. A registrant actually deprived of his constitutional rights may be expected seasonably to seek their vindication. In an effort to exculpate himself from the imputation of delinquency in the quest of his freedom, the complainant as a witness professed that at the time of his induction he was ignorant of his legal right to seek a writ for his release and did not learn of it until shortly before starting this suit. The court need not inquire narrowly into his exact knowledge of his rights. Surely, the more nearly a conscripted soldier unquestioningly allows his military service to approach the imminence of combat, the less favorably should a court appraise his charge of the invalidity of his induction. A realistic understanding of human frailty argues for that course. Otherwise, military discipline and stability and effectiveness are palpably insecure.

Finally, the nature of a claim for occupational deferment might appropriately be considered in a case of this character, though it has not controlled or influenced the present decision. It has long been declared and recognized that in the determination of all claims, under the Selective Training and Service Act, to deferment from military service and training, the primary interest to be sought is that of the national defense, rather than the welfare or necessities of the registrant. Exemption and deferment are granted by law under a legislative appraisal of what is in the national interest. Now, while, in certain grounds for exemption or deferment, e.g., ministerial status, conscientious objection, dependency, and the like, there are substantial elements of interest personal to the registrant, it would seem to be quite otherwise in respect of a claim based only upon a registrant's occupation as essential to the war effort. Such an issue ought to involve, not only primarily, but solely, the public interest, and to be resolved by the answer to the question where the affected registrant may most effectively promote the national defense. However, this case has been considered and decided upon the premise that the registrant, though he claimed deferment on no ground other than his occupation, had a constitutional right to the fair determination of his claim without caprice or arbitrariness, neither of which nullifying attributes is discernible in the present record.

Judgment is being entered sustaining the respondents' motion to dismiss tendered at the close of the evidence, discharging the writ of Habeas Corpus heretofore granted and allowed, denying the prayer of the complainant, and dismissing his complaint and amended complaint and assessing costs against him. Exceptions are allowed.